The opinion of the Court was delivered by
Tilghman C. J. —
In the course of the trial, the counsel for the defendant took several exceptions to evidence, and an exception to the charge of the Court.
1. The first exception was to the endorsement on the draft of John Palmer's survey, “ John Palmer now Jesse Lukens." It was contended, that this endorsement was not evidence, because the deputy surveyor had nothing to do with the property — his business was, to make the survey and return it. *387 But, considering the well known practice of entering applications in the name of one man in trust for another, it has been usual to admit evidence of what was done at the time of the survey, in order to shew the person to whom the application really belonged. The appearance on the g>ound, and giving directions, the furnishing of provisions, and paying the expense of the survey, have been considered as material circumstances. The endorsement in question, may be considered as the Act of the surveyor, at a time when there was no dispute ; and though not strictly part of his duty, it was by no means inconsistent with his duty. The name of the person mentioned in the application, was always endorsed on the official draft, and where the real owner was known to the deputy surveyor, it was not uncommon to add it, as was done in this instance, it was a circumstance proper to be submitted to the jury, who would give it what weight they might think it deserved. Such evidence has been received in other cases, and was determined to be proper in this verv case, when it was in this Court before, as will appear from the report in 4 Serg. & Rawle, 298. And the Court then pointed out the distinction between this endorsement, which is agreeable to the practice of deputy surveyors, and endorsements of a different nature, in which the officer undert kes to make a statement of facts unconnected with his official return. I am of opinion, therefore, that this'evidence was proerly admitted.
The second exception was relinquished.
The third exception was to the deposition of Wm. Walker. There were several immaterial objections to the reading, of any part of this deposition, viz. u that' it was not entitled." That “ it is not expressed to be taken under a rule of Court." That “ it was doubtful zvhether the witness was not well enough to attend the trial" and if he was, his deposition was not evidence. To the two first of these objections it is a sufficient answer, that the- deposition was annexed to a certified copy of the rule of Court under' which it was taken. And as to the state of health of the witness, it was inquired into by the Court below, who were satisfied that he was unable to attend in person. But besides these objections which went to the whole deposition, there were others, to particular parts of it. The deponent swore, that he saw •Edmund Huff pay fifty pounds, (without mentioning *388 to whom) and that when he made the payment, he said, „ This is the amount of Thangascutack; it is mine now.” These *ast worr*s were objected to. They would be evidence or not, according to circumstances. If the payment was made to a Person entitled to receive the money, and the words were addressed to him, or were spoken to another in so loud a voice that it was quite certain they were heard by the receiver of the money, they would be evidence, because if they were not contradicted, it would afford some ground for inference that they were true, and if true, the whole purchase money was paid. But another and more important objection, was to that part of the deposition in which the deponi nt said, that he miderstood that it was the former owner of the land, that received the money of the said Huff” This is a most important part of the case. In short every thing depended on it. If the deponent knew the person that received the money, he ought to have said so. If he did not know him, but was informed by another that he was the former owner of the land, the person who gave the information should have been produced and sworn as a witness. I consider the expressions used by the deponent, as equivalent to saying that he had been informed,, &c. and therefore no more than hearsay evidence. There was error therefore, in suffering that part of the deposition to be read to the jury.
The 4th exception was relinquished. >
The remaining exceptions, are to the charge of the Court. The President instructed the jury, “ that if fesse Lukens had agreed to sell to Levi Jones, and they were satisfied that Jones was in possession under the agreement, at the time of Charles Lukens’s conveyance to John Lukens, then, inasmuch as the deed of conveyance did not describe any particular tract of land, it was not to be supposed that it was the intent of the parties that land should pass which had been previously disposed of.” It appears to me that this charge was wrong in several respects. It left to the jury the construction of the deed, which belonged to the Court; and so far as the Court intimated any opinion, it was erroneous. The intent of the parties, is to be determined by their words. This deed contains the most comprehensive words. It conveyed “ all the real estáte of which Jesse Lukens died seised or possessed, or in which he was, at the time of his death, any way interested, either in his own *389 right, or which any person or persons held for him in trust, or in which he was any way interested, in any partnership or partnerships, or to which he was otherwise entitled.” Now there was not a particle of evidence to shew that Jesse Lukens had ever divested himself of the legal estate of this land. The most that can be said is, that he had made a parol agreement to sell and delivered possession, without having received the purchase money or any part of it. Consequently, the legal estate remained in him, and descended, on his death, to his brother Charles, who conveyed to John Lu-kens. At the time of that conveyance, it does not appear that any of the purchase money had been paid ; and if it never afterwards had been paid, I think it very clear, that John Lukens might have recovered in an ejectment. The Judge ought to have informed the jury, that the legal estate, having never been conveyed by Jesse Lukens, it descended to his brother Charles, and passed to John Lukens, by the general words in Charles's deed, subject to any agreement which Jesse Lukens might have made with Levi Jones.
The «next error assigned in the charge is, that the jury were told “ that the writings signed by Jesse Lukens, which have been mentioned before, and the assignment of the widow of Levi Jones, were sufficient, in law and equity, to enable Edmund Huff, to demand a conveyance from the heirs or legal representatives of Jesse Lukens, on payment of the balance of the purchase money.”
The law does not seem to have been accurately laid down, if Levi Jones had an equity in this land under his agreement with Jesse Lukens, that equity descended, on his death, to his brother Peter Jones; and his widow had no right to dispose of it. Some evidence should have been given, to satisfy the jury, that Peter Jones had transferred his right to Huff, or had at least acquiesced in Huff's taking his place, and completing the contract. And if upon the whole evidence, it appeared that Peter Jones, without making any conveyance to Huff, relinquished the contract, and a new agreement was made by Charles Lukens with Huff, it would have been necessary that John Lukens should have consented to that contract. John Lukens held the legal estate, subject to the agreement between Jesse Lukens and Levi Jones, but not subject to any agreement which Charles Lukens might *390 make with any other person. Charles L ke-is hid no right, as one of the administrators of Jesse, to sell, the land to Huff. An administtator has no power over the land. Therefore no writing which Charles Lukens signed without the assent of his father John L kens, could pass any right to any other person than the heirs of Levi Jones. And indeed, Charles Lukens appears to have been sensible of ihis; lor he expressly engages to convey to Edmund Huff or other legal representatives of Levi Jones, on payment of the residue of the purchase money, t he jury ought therefore to have been instructed, that these writings did not, of themselves, authorise Huff to call for a conveyance on payment of the whole purchase money ; and that it was necessary, besides, to satisfy the jury, that the heir of Levi Jones had transferred his right to Huff, or at least that he had relinquished the contract; and in that case, the consent of John Lukens would have been necessary to make good the contract between Charles Lukens and Huff
The last error assigned in the charge, is, the opinion delivered by the Court, that the plaintiff' might recovei*without tendering to the representatives of Jesse L fens, the money expended in procuring a patent for this land. That opinion, I think, was right. Levi Jones purchased the right of Jesse Lukens, such as it was, under John Palmer’s application aud survey. He was answerable to the Commonwealth for the purchase money due to the late proprietaries, and was not bound to pay it, till the Commonwealth called for it. The executors of John Lukens did not obtain a patent at the request of Jones, or of Huff, or with an intent to confirm their title. On the contrary the patent was adverse to them, and for the purpose of vesting the title in the devisees of John Lukens. Under these circumstances, supposing the title of the plaintiff to have been in all other respects good, it would be too much to say, that he was bound to tender the money which had been expended with a view to injure him. Whether this money may be recovered from Huff, in case he should ultimately succeed in his suit for the land, I give no opinion ; but I am satisfied, the charge of the Court, on this point, was right. Upon the whole, then, I a-a opinion, that the Judgment should be reversed, and a venire de novo awarded.
Judgment reversed, and a venire facias de novo awarded.