COMMONWEALTH vs. JOHN M. JONES.

Essex. May 4, 1987. — August 4, 1987.

Present: HENNESSEY, C.J., WILKINS, NOLAN, & LYNCH, JJ.

*Evidence*, Admissions and confessions, Accomplice, Common criminal enterprise, Photograph. *Practice, Criminal*, Voluntariness of statement, Instructions to jury, Argument by prosecutor, Capital case. *Homicide. Intoxication. Intent. Judge.*

At a murder trial, the judge did not err in admitting certain testimony of a woman as to what the defendant's accomplice had said to her in her apartment on the night of the killing, while in the defendant's presence, where the question whether in the circumstances the defendant had adopted the accomplice's statements by his response or responses was properly for the jury. [546-547]

At a murder trial, there was no error in the admission of testimony of three women to whom the defendant had made various inculpatory statements shortly before or after the victim's death, where the judge was warranted in finding beyond a reasonable doubt that the defendant's statements to the women were voluntarily made. [547-548]

Where the judge at a murder trial instructed the jury to consider the defendant's intoxication on the issues of deliberate premeditation and extreme atrocity or cruelty, but refused to charge them that the defendant's intoxication could be considered in deciding whether the Commonwealth had proved beyond a reasonable doubt that the defendant had a specific intent to steal, which is an element of robbery and, therefore, one element of a felony-murder conviction based on robbery, and where the jury found the defendant guilty of murder in the first degree on each of the three theories, it was held that any error in the judge's instructions related solely to the felony-murder theory and was, therefore, not prejudicial. [548]

There was nothing in the record of a murder trial to support the defendant's claim that the judge's conduct of the trial, particularly his conduct of the voir dire proceedings, exceeded proper bounds. [548]

At a murder trial, the judge gave careful limiting instructions and did not abuse his discretion in admitting certain photographs of the victim's body. [548]

It was proper for the prosecutor at a murder trial to refer in closing argument to the condition of the victim's body as demonstrating extreme atrocity or cruelty in the commission of the murder. [548]

On an appeal in a capital case, the defendant's contention that, since he was just seventeen years old at the time of the incident and his accomplice was sixteen years old, there was a fundamental unfairness in the difference between his life sentence and his accomplice's commitment to the Division of Youth Services as a juvenile only until his eighteenth birthday presented no occasion for relief under the power granted this court by G. L. c. 278, § 33E. [549]

INDICTMENT found and returned in the Superior Court Department on October 20, 1982.

The case was tried before *Robert A. Barton*, J.

*Patrick J. Riley (Patricia S. Hohl* with him) for the defendant.

*Robert J. Bender*, Assistant District Attorney, for the Commonwealth.

WILKINS, J. The defendant was found guilty of the murder in the first degree of Donald Pinkham. The evidence showed that Pinkham was killed in Gloucester in the early hours of October 1, 1982. His body was badly burned, bruised, and beaten; part of his face was missing; and his head appeared to have been crushed.

There was sufficient evidence to warrant the jury's verdict, and the defendant does not argue otherwise. Much of the incriminating evidence came from three young women to whom the defendant made various inculpatory statements shortly before or after Pinkham's death. The defendant challenges the admission of those statements, arguing that they were not voluntarily made. He also contends that statements made to one of the young women in his presence by his accomplice, then a juvenile, were otherwise inadmissible. He further challenges certain aspects of his trial. Finally, he seeks relief under G. L. c. 278, § 33E (1984 ed.), arguing, among other things, that there is a fundamental unfairness between his life sentence and his accomplice's commitment to the Division of Youth Services as a juvenile only until his eighteenth birthday.[1] We affirm the conviction.

---

[1] The defendant states that he had attained his seventeenth birthday one month before the incident. His accomplice was sixteen years and two months at that time. The Commonwealth represents that its attempt to have the accomplice treated as an adult was unsuccessful.

The defendant and the juvenile planned to rob the victim for his money. They killed him on a path, ironically known as "Dead Man's Path," near the railroad tracks. They set his body on fire. They struck his head with rocks causing seriously disfiguring injuries. They then went to the apartment of Jody Tyne, a friend of the defendant who was several years older than they. There the two made admissions, whose admissibility we discuss later. On Tyne's order, the next day the defendant, admitting to nothing, led the police to the victim's body. The defendant told his then girl friend that "they did it" because the juvenile wanted money. He admitted to kicking the victim and going "wild." He made admissions to another woman who lived in the same development where he and Tyne also lived. He agreed with her to turn himself in to the police. There was testimony from various sources that the defendant had been drinking on the night of the murder.

1. The defendant argues that the judge erred in permitting Tyne to testify to what the juvenile said to her in her apartment on the night of the killing, while in the defendant's presence. The defendant contends that the juvenile's statements were not admissible as adoptive admissions.[2]

We review relevant portions of Tyne's testimony. Between 2:20 A.M. and 2:30 A.M., of October 1, 1982, the defendant and the juvenile arrived outside Tyne's first floor apartment in Maplewood Park in Gloucester. She let them in. The juvenile had blood on his clothes and on his hands, which he washed in a sink in the bathroom. The defendant had a bloody handprint on his wrist, blood on his fingernails, and spots of blood on his pants and sneakers. The three had a conversation in the parlor. The juvenile said that he beat the victim with rocks and told how he burned him. The defendant, who had apparently been crying since his arrival, continued to cry. The defendant made reference to a "Sweet Shop" where they said they went "for an alibi." They both mentioned code names they had used to avoid detection and laughed about it. They

---

[2] We are concerned on this issue with Tyne's testimony before the jury and not with what she testified to during the voir dire on the voluntariness of the defendant's statements.

said that they wanted to "roll" the victim because he had just received a check. The juvenile told the defendant that "he was in this with him whether he wanted to be or not." In response the defendant cried.[3] Asked if the defendant had been sober, Tyne replied that "[h]e was totally out of his mind."

This testimony does not present the picture the defendant seeks to portray of an inebriated defendant who sat quietly while the juvenile made statements to Tyne. To the extent that the defendant participated in the conversation, his statements and the statements of others to which he responded were admissible. *Commonwealth* v. *Simpson*, 370 Mass. 119, 123 (1976). As to any statement made by the juvenile, the question whether in the circumstances the defendant adopted them by his response or responses was properly for the jury. See *Commonwealth* v. *Brown*, 394 Mass. 510, 515 (1985); *Commonwealth* v. *McGrath*, 351 Mass. 534, 538 (1967); *Commonwealth* v. *Boris*, 317 Mass. 309, 317 (1944).

Because Tyne's testimony concerning statements made by the juvenile in the defendant's presence was properly admitted on well-established principles of evidence, the defendant was not denied his constitutional right of confrontation. See *Ohio* v. *Roberts*, 448 U.S. 56, 66 (1980); *Commonwealth* v. *Brown, supra*; *Commonwealth* v. *McLaughlin*, 364 Mass. 211, 219 (1973). This is not a situation in which the Commonwealth was obliged to demonstrate the unavailability of the juvenile before his statements could be admitted.

The judge was warranted in finding beyond a reasonable doubt that various statements the defendant made to witnesses were voluntarily made. The judge held voir dire hearings on the voluntariness of the defendant's statements to the witnesses and ruled that the defendant made the statements voluntarily. This is a matter on which an appellate court grants considerable deference to the trial judge's findings. The credibility of these

---

[3] At the voir dire (but not before the jury), Tyne testified that the defendant said, "I didn't have to do this." The Commonwealth cannot properly rely on this statement to show the admissibility before the jury of Tyne's testimony about the conversation, but it can rely on it as tending to show the voluntariness of the defendant's statements and admissions.

witnesses and the voluntariness of the defendant's statements, therefore, were properly submitted to the jury.

2. We briefly consider other arguments. (a) The defendant objects to the judge's refusal to charge the jury that the defendant's intoxication could be considered in deciding whether the Commonwealth had proved beyond a reasonable doubt that the defendant had a specific intent to steal, which is an element of robbery, and, therefore, one element of a felony-murder conviction based on robbery. The judge did instruct the jury to consider intoxication on the issues of deliberate premeditation and extreme atrocity or cruelty.

The jury found the defendant guilty of murder in the first degree on each of the three theories. Any error in the judge's instructions related solely to the felony-murder theory and was, therefore, not prejudicial. *Commonwealth* v. *Shine*, 398 Mass. 641, 654 (1986). We add, however, that developments since the October, 1983, trial of this case have changed the way in which a jury should be charged concerning a defendant's intoxication when the crime is one which could be or must be proved by a showing of a specific criminal intent. See *Commonwealth* v. *Grey*, 399 Mass. 469, 474 (1987); *Commonwealth* v. *Henson*, 394 Mass. 584, 593 (1985).

(b) We see nothing in the record to support the defendant's claim that the judge's conduct of the trial, particularly his conduct of the voir dire hearings, exceeded proper bounds. The judge conducted the trial without bias, with considerable patience, and with tolerance of the defendant's condition. He did not assume the role of a prosecutor. It was not error to advise a witness in the course of a voir dire that perjury committed in a murder case was subject to a sentence of life imprisonment.

(c) The judge gave careful limiting instructions and did not abuse his discretion in admitting photographs of the victim taken at the scene of his killing and elsewhere.

(d) Similarly we find nothing improper in the prosecutor's closing argument. He was entitled to argue the evidence, including the brutality of the crime. In doing so, he properly could refer to the condition of the victim's body as demonstrating extreme atrocity or cruelty in the commission of the murder.

3. We see no basis for ordering relief pursuant to G. L. c. 278, § 33E. The circumstances of the killing do not warrant an order that a verdict of a lesser degree of guilt be entered.

The defendant argues that he was just seventeen years old at the time of the incident and that we should consider the disparate treatment given to the juvenile who was sixteen years old at the time of the crime. The defendant, who did not testify, contends the juvenile was the more active participant in the crime. The juvenile was not transferred to the adult system, was adjudicated delinquent by reason of murder, was committed to the Division of Youth Services, and was fully discharged in July, 1984. We do not know the reason why the juvenile was not transferred for trial as an adult. The record of the juvenile proceedings is not before us. The fact that the juvenile possibly was an undeserving beneficiary of a decision not to treat him as an adult cannot be the basis for relief to this defendant. The Legislature has drawn the line between juvenile and adult wrongdoing, and we must adhere to it within constitutional limits.

*Judgment affirmed.*