COMMONWEALTH *vs.* MIGUEL A. VAZQUEZ.[1]

Middlesex. October 5, 1994. - January 20, 1995.

Present: LIACOS, C.J., WILKINS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Homicide. Intoxication. Intent. Practice, Criminal,* Argument by prosecutor, Instructions to jury, Capital case. *Evidence,* Photograph. *Malice.*

At a murder trial, the evidence of the defendant's voluntary intoxication did not require, as a matter of law, the finding that the defendant lacked the specific intent to commit murder. [352-353]

At a murder trial there was no error in the prosecutor's closing argument. [353]

At a murder trial, there was no error in the judge's admission in evidence of an autopsy photograph of a broken neck bone removed from the victim's body, where the judge found that the photograph of the injury was relevant to whether the strangulation of the victim was committed with extreme atrocity or cruelty. [354]

No substantial risk of a miscarriage of justice was created at a first degree murder trial by the judge's failure to instruct the jury on the effect of voluntary intoxication on the third prong of malice, where the evidence at trial regarding intoxication was not sufficient to negate the jury's finding of extreme atrocity or cruelty. [354-355]

At a murder trial the judge's instructions to the jury on the issue of provocation were correct and sufficient. [355]

INDICTMENT found and returned in the Superior Court Department on October 19, 1988.

The case was tried before *David M. Roseman,* J.

*Stanley W. Norkunas* for the defendant.

*Michael Adam Chinman,* Assistant District Attorney, for the Commonwealth.

LYNCH, J. The defendant was found guilty by a Superior Court jury of murder in the first degree by reason of extreme

---

[1] As is our custom, we spell the defendant's name as it appears on the indictment.

atrocity or cruelty. In this appeal, the defendant contends that: (1) his excessive consumption of alcohol debilitated his mental condition, such that, as a matter of law, he was incapable of forming the specific intent required for a murder conviction; (2) the prosecutor's closing argument was prejudicial; (3) it was an abuse of discretion for the judge to allow in evidence a photograph of an extracted part of the victim's body; (4) the judge's instructions contained several errors; and (5) pursuant to G. L. c. 278, § 33E (1992 ed.), this court should reduce the verdict to murder in the second degree. We affirm and decline to exercise our power under G. L. c. 278, § 33E.

There was evidence from which the jury could have found that, on September 20, 1988, around 9 P.M., the police discovered the victim's body covered with silver paint in a grassy, wooded area near Gallagher Square in Lowell. The defendant had purchased a quart of beer from a local liquor store in Lowell at about 9:30 A.M., and returned to this liquor store two or three times over the next four to six hours, purchasing another quart of beer each time. That same morning, the victim and one of his friends went to the Sportsman's Club in Lowell where they each consumed several beers. Before leaving the club, the victim's friend gave the victim ten dollars to purchase a partially used five-gallon can of silver paint from another patron in the bar. When the victim's friend left around 1:30 P.M., the victim remained at the club.

Between 2:30 and 3 P.M., the defendant entered the Sportsman's Club, sat with the victim, and they each consumed one or two more beers before leaving. Later that afternoon, around 4:40 P.M., the defendant and the victim were seen on a street corner near Gallagher Square consuming a can of beer. At that time, the victim was still carrying the five-gallon can of paint. At approximately 5:30 P.M., witnesses saw the defendant and the victim near the grassy, wooded area close to Gallagher Square.

Shortly after 6:30 P.M., a woman saw the defendant, covered with silver paint, walking toward her and away from

Gallagher Square. Based on her brief conversation with the defendant, she did not believe him to be intoxicated. At approximately 7 P.M., the defendant, still covered with paint, went to his then current residence, the Middlesex Shelter which is located near the Sportsman's Club. After talking with other shelter residents, the defendant pleaded with the front desk supervisor to release him even though the defendant knew the shelter's policy prohibited leaving the shelter once a resident had come in during the evening. After the defendant had been "put out for the night," one of the shelter residents who had spoken with the defendant went to the front desk. Based on this conversation, the supervisor contacted the Lowell police who eventually located the defendant and asked him whether he had found a body. The defendant stated that he had been urinating in the bushes in Gallagher Square and that when he looked down, he saw a body. After leading the police to the body, the defendant went to the Lowell police station for questioning. He denied that he had been involved in a fight with the victim and stated that he had been urinating and had merely found the victim. The officers that questioned the defendant stated that the defendant's speech was clear, calm, easy to understand, and not slurred.

The next morning, the defendant admitted to being involved in a violent fight with the victim. He stated that he had hit the victim over the head with the five-gallon paint can and had punched the victim in the face at least twice.

1. *Voluntary intoxication.* The defendant's argument that his excessive consumption of alcohol debilitated his mental condition, such that, as a matter of law, he was incapable of forming the specific intent required for a murder conviction is legally flawed. This court has held that, when proof of the defendant's specific intent is required, "the judge should instruct the jury, if requested, that they may consider evidence of the defendant's intoxication at the time of the crime in deciding whether the Commonwealth has proved that specific intent beyond a reasonable doubt." *Commonwealth* v. *Henson*, 394 Mass. 584, 593 (1985). If, however, the jury find

that the defendant's specific intent has been established beyond a reasonable doubt, the defendant's voluntary intoxication cannot be used to excuse or to justify the defendant's actions. *Id.* at 593-594. Moreover, the Commonwealth does not have to prove that the defendant was not intoxicated. *Commonwealth* v. *Costello*, 392 Mass. 393, 404-405 (1984). Nevertheless witnesses who observed the defendant both before and after the incident described his conduct in such a way as to warrant the conclusion that he was not impaired or debilitated by alcohol. Furthermore, the jury could have reasonably concluded that the Commonwealth established the defendant's specific intent beyond a reasonable doubt. There was evidence that the defendant smashed a heavy paint can into the middle of the victim's face, fracturing his facial bones, kicked the victim on both his right and left sides, rupturing his internal organs, and manually strangled the victim for a minimum of thirty seconds, fracturing his hyoid bone. Specific intent, therefore, could have been established by the defendant's repeated infliction of serious physical injuries. The evidence of the defendant's voluntary intoxication did not require, as a matter of law, the finding that the defendant lacked that intent.

2. *The prosecutor's closing argument.* The prosecutor's closing argument did not misstate evidence nor argue matters not in evidence. At the beginning of his closing the prosecutor stated that the best evidence concerning what happened and the defendant's intent was the body of the victim. At the end of his argument his statement that the jury "take with [them] the body of [the victim] . . . and go into [the] jury room and deliberate," when taken in context, was not improper. A prosecutor may refer to the condition of the victim's body in the context of demonstrating specific intent and extreme atrocity or cruelty in the commission of the murder. *Commonwealth* v. *Jones*, 400 Mass. 544, 548 (1987). Viewed in its entirety, and in light of the judge's instruction that counsel's arguments do not constitute evidence, *Commonwealth* v. *Haskins*, 411 Mass. 120, 121-122 (1991), there was no error.

3. *The admission of the photograph.* The defendant contends that it was an abuse of discretion and therefore error for the judge to admit in evidence a photograph of the victim's hyoid bone after it had been removed from his body.

"It is well settled in a case such as the present one, in which the defendant is accused of committing murder with extreme atrocity or cruelty and with premeditation and deliberation, that photographs indicating the force applied and portraying the injuries inflicted may properly be admitted on the issue of whether the murder was committed with extreme atrocity or cruelty, as well as on the issue of premeditation and deliberation. *Commonwealth* v. *Bys,* 370 Mass. 350, 358 (1976), and cases cited (extreme atrocity or cruelty). *Commonwealth* v. *Sielicki,* 391 Mass. 377, 382 (1984) (premeditation and extreme atrocity). It is also well settled that, if the photographs possess evidential value on a material matter, they 'are not rendered inadmissible solely because they are gruesome or may have an inflammatory effect on the jury.' *Commonwealth* v. *Bys, supra. Commonwealth* v. *Rogers,* 351 Mass. 522, 531 [cert. denied, 389 U.S. 991] (1967)." *Commonwealth* v. *Ramos,* 406 Mass. 397, 406-407 (1990). "Whether photographs were 'so inflammatory in nature as to outweigh [their] probative value and preclude [their] admission is a question to be determined by the trial judge in the exercise of his sound discretion.' " *Id.* at 407, quoting *Commonwealth* v. *D'Agostino,* 344 Mass. 276, 279, cert. denied, 371 U.S. 852 (1962). In this case, the judge held a voir dire regarding the admissibility of the autopsy photograph and, following the teaching of *Commonwealth* v. *Bastarache,* 382 Mass. 86, 106 (1980), explicitly found the photograph to be helpful to the jury in assessing the issue of strangulation. The exercise of his discretion to admit the photograph was based in part on an assessment of the contested issues of fact. There was no error.

4. *Jury instructions.* The defendant argues that the judge's instructions were deficient in two respects in regard to malice. The defendant argues for the first time on appeal that the judge failed to inform the jury that they could consider

the defendant's voluntary intoxication in assessing whether he had the necessary mental state to possess the malice necessary for murder. However, the judge stated "you may consider the defendant's mental condition on the day in question, including any voluntary intoxication by the use of alcohol, if any, in determining whether or not the defendant specifically intended to kill the victim or specifically intended to inflict grievous bodily harm on him, both of which are bases for a finding of malice aforethought." In this situation we review to determine whether there has been a substantial likelihood of a miscarriage of justice. See *Commonwealth* v. *Viriyahiranpaiboon,* 412 Mass. 224, 231 (1992); *Commonwealth* v. *Shea,* 401 Mass. 731, 735 (1988). This instruction sufficiently informed the jury of their task in assessing the first two prongs of malice. His failure to instruct on the effect of voluntary intoxication on the third prong of malice did not create a substantial likelihood of a miscarriage of justice. As evidence at trial regarding intoxication was not sufficient to negate the jury's finding of extreme atrocity or cruelty, the defendant was not prejudiced by any omission from the instruction on the third prong of malice. See *Commonwealth* v. *Costa,* 414 Mass. 618, 628 (1993).

The defendant also argues that the judge improperly instructed the jury on the issue of provocation. Although the evidence of provocation was slight, the judge correctly charged the jury that, "[w]here there is evidence of provocation, the Commonwealth has the burden of proving beyond a reasonable doubt that the defendant did not act in the heat of passion," and explained that sufficient evidence of reasonable provocation can be considered as a factor to reduce a charge of murder to voluntary manslaughter. The judge also instructed that "[p]hysical contact, even a single blow . . . may amount to adequate provocation." The instruction was sufficient.

5. *Relief pursuant to G. L. c. 278, § 33E.* We see no reason to exercise our power under G. L. c. 278, § 33E.

*Judgment affirmed.*