COMMONWEALTH *vs*. KEVIN M. BABBITT.

Bristol. November 2, 1999. - February 3, 2000.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Homicide. Practice, Criminal,* Confrontation of witnesses, Admissions and confessions, Hearsay, Capital case. *Constitutional Law,* Confrontation of witnesses, Admissions and confessions. *Evidence,* Admissions and confessions, Admission by silence.

At a murder trial, incriminating statements made by a codefendant in the defendant's presence were properly admitted under the adoptive admissions exception to the rule against hearsay. [705-706, 707-709]

Discussion of the hearsay exception for adoptive admissions. [706-707]

INDICTMENT found and returned in the Superior Court Department on January 24, 1996.

The case was tried before *Charles J. Hely*, J.

*Roger A. Cox* for the defendant.

*Elspeth B. Cypher*, Assistant District Attorney, for the Commonwealth.

SPINA, J. The defendant, Kevin M. Babbitt, was convicted by a jury of murder in the first degree of Wilbert Greene, Jr., on theories of deliberate premeditation and extreme atrocity or cruelty. David Rosado also was convicted of murder in the first degree of the same victim following a separate trial.[1] Witnesses testified at Babbitt's trial that Rosado had spoken about the murder in Babbitt's presence. Rosado did not testify. Babbitt claims that the admission of the witnesses' testimony violated the confrontation clauses of the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. We reject Babbitt's contentions. We affirm his conviction and decline to exercise our plenary power under G. L. c. 278, § 33E, to order a new trial or to enter a verdict of a lesser degree of guilt.

1. *Facts.* The jury could have found the following facts. Bab-

---

[1]Commonwealth *vs*. David Rosado, SJC-07832.

bitt and Rosado lived in room 9 of a motel in Attleboro. The victim, Wilbert Greene, Jr., an African-American man, lived next door, in room 10. One evening in the middle of January, 1995, Babbitt and Rosado had a loud party in their room. The guests were Mark Bilsborough, Richard Dolan, Michael Hayward, Steven Richard, and Patrick Vigor. Racial slurs of various sorts were uttered; the doctrine of white supremacy was vigorously asserted, especially by Rosado. Someone in room 10 pounded on the wall that separated rooms 9 and 10, probably to signal annoyance at the volume of the music. Rosado pounded back and shouted racial epithets and violent threats at the person on the other side.

At about 11:30 P.M., Charlene Hall, an employee and resident of the motel, was awakened by screaming and yelling. She arose and for a few minutes watched Rosado and Babbitt kicking and punching someone, whom she could not identify, on the ground outside rooms 9 and 10. They were "beating the living daylights out of the person on the ground." After Hall yelled at Rosado and Babbitt to stop, they ran away. Later the two men returned and resumed their attack on the person on the ground. Again Hall told the men to stop, and again they left the scene. Babbitt told Hall the day afterward that someone other than Greene had been the victim of the beating, and that Greene had suddenly left the motel. Babbitt later showed Hall blood on the wall of room 10. Hall, who had seen Greene almost daily for almost two years, never saw Greene alive again.

Another resident of the motel, Matthew Nelson, was also awakened by noise late in the evening. He saw Babbitt and a second white male beating and kicking Greene on the ground. Babbitt was wearing work boots. Greene was making ineffectual efforts to protect himself from the blows, which his attackers appeared to be directing at the area around his face. After the beating went on for about ten minutes, Nelson yelled at Babbitt and the second white male. The two men dragged Greene toward rooms 9 and 10.

Not long afterward, Steven Richard, a seventeen year old young man who lived at the motel with his mother, was asked by Babbitt to come with him to room 10. Richard saw a black man lying naked on the mattress. Richard asked if the man needed medical attention. Babbitt responded, "No, this [racial epithet] is all done." Babbitt approached the mattress, grabbed a pillow, placed it over the man's head, and said, "We got this

guy good." Rosado told Richard that he was "involved" in the matter, and that he had better not tell anyone. The body was wrapped in a blanket, Richard was handed a shovel, and Babbitt and Rosado began carrying the body into the woods near the motel. When the body was dropped to the ground, Richard heard a noise that sounded "like air" coming from the body. Rosado dug a hole and instructed Richard and Babbitt to gather brush to put over the hole. The body was put in the hole and covered. At a later date, Babbitt saw Richard at the motel and told him to "keep [his] mouth shut."[2]

Over the next several weeks, Babbitt and Rosado repeatedly told friends and neighbors various elements of the following story: the two men had beaten Greene, killed him, and buried his body in the woods near the motel.[3] In late February, the police learned of one such remark. Two officers drove to Secaucus, New Jersey, on February 28 to interview Babbitt. On finding Babbitt, they advised him of his rights but did not arrest him. Babbitt initially disclaimed knowledge of the murder or of Greene and denied having been involved in the fight in front of rooms 9 and 10. Then Babbitt claimed that Rosado had beaten Greene and buried his body behind the motel. Later in the conversation, Babbitt said that he had followed as Rosado carried the body to the woods and had watched Rosado dig the grave. Babbitt did not acknowledge taking part in these acts.

Babbitt agreed to return to Attleboro to show police where the body was buried. On March 1, Babbitt made another statement to police in which he admitted to assisting in covering the grave and to discarding the blanket in which the body had been wrapped. Babbitt said that he had heard "a gasp or a moan" when the body was placed in the grave. He described the sound as "a last breath." Babbitt also said that Rosado had repeatedly told him that he hoped they would not get caught, and that he had responded by telling Rosado to shut up.

The police found Greene's body on March 1. A medical examiner who examined the body concluded that Greene's death was caused by blunt trauma to the head.

---

[2]Richard was charged as an accessory after the fact to the murder of Greene. He testified pursuant to an agreement with the Commonwealth.

[3]For instance, one night Babbitt asked Hayward, Bilsborough, and Richard whether they wanted to see where the body was buried. They visited the woods, but Babbitt could not find the body. On their way back to the motel, Babbitt said that he had killed the victim and that he was "definitely dead."

2. *Discussion.* a. *The testimony challenged on appeal.* On appeal, Babbitt challenges the admission of testimony by five witnesses as to statements that Rosado made in Babbitt's presence. Babbitt objected at trial to the testimony of only the second and fifth witnesses. We briefly review the testimony.

(1) *David Maloney.* David Maloney, a friend of Rosado, saw Rosado and another man on a bus during the last week of February. Laughing, Rosado boasted that he had beaten a black man badly for several days, killed him, and buried him behind the hotel. Rosado complained that his companion had told "about a hundred people" about the killing and expressed surprise that they had not yet been arrested. To Maloney, Rosado's companion seemed "very down"; he was drinking from a brown paper bag. Throughout Rosado's conversation with Maloney, the second man said nothing.

At the trial, Maloney identified Babbitt as Rosado's companion on the bus.

(2) *Richard Dolan.* A week after the party, Dolan returned to the motel. He saw both Babbitt and Rosado. In Babbitt's presence, Rosado told Dolan, "Yeah, we killed the [racial epithet]. . . . We killed the [racial epithet] over next-door."

Babbitt's trial counsel objected to this testimony without specifying a basis for his objection. The objection was overruled. On redirect examination, Dolan reaffirmed that Babbitt had been present when Rosado had made the statement. Babbitt's trial counsel did not object. On appeal Babbitt challenges only Dolan's direct testimony.

(3) *Michael Hayward.* Two weeks after the party, Hayward visited the motel with Bilsborough. In Babbitt's presence, Rosado told Hayward and Bilsborough that the two men had beaten the man next door and buried him in the woods. They had tried to suffocate the victim, Rosado said; when that proved ineffective, they resorted to beating him. Babbitt gestured to Rosado to keep quiet throughout the conversation. Babbitt and Rosado laughed at times during the conversation.

(4) *Mark Bilsborough.* The day after the party, Bilsborough visited Babbitt and Rosado in room 9. He saw two shoes and a belt outside room 10. The doorway was open, and Bilsborough looked inside. Greene "looked like he was dead as a doornail"; "[h]e was slipped down on the side of his bed with his head down," "leaning his back against the bed with his head slumped down, like someone placed him right there." Greene's shirt had

been removed. Bilsborough went into room 10 and found Babbitt and Rosado. Rosado told Bilsborough that the "guy took the message; that they beat him up and that he had the message to pack up and leave." Babbitt and Rosado each took part in telling their story of what had happened the night before: Greene had tried to barricade his door, Rosado and Babbitt had forced their way in, Rosado had grabbed Greene by the neck and the head, Greene had responded by making an insulting gesture, and Babbitt had retaliated by grabbing Greene's finger and bending it back to the wrist.

(5) *Constance Robinson.* Constance Robinson lived at the motel with her son. Constance Robinson testified that Babbitt and Rosado entered her room on February 12. Rosado held a knife to her son's throat and asked him if he thought Rosado was capable of killing someone. He replied affirmatively. Rosado said that he and his "bro" had "already killed" a black person and that they were not afraid to kill again. Turning to Babbitt, Rosado said, "Right, bro?" Babbitt said, "Right, bro," and smiled. Robinson told Rosado that there was no statute of limitations on murder. Babbitt said that "he wasn't going to go to prison for nobody." Babbitt told Rosado to be quiet at various points during the conversation.

Later that day, Robinson visited room 9. Babbitt was making racist statements, including "Heil Hitler," and "white supremacy rules." Robinson told Babbitt that her former husband was an African-American. Rosado said that he wanted to know where her ex-husband lived because they wanted to kill him as well. Babbitt laughed. He continued to tell Rosado to be quiet.

Citing *Bruton* v. *United States*, 391 U.S. 123 (1968), Babbitt's counsel objected to the admission of Robinson's testimony on the ground that Babbitt would be denied the right to confront and cross-examine Rosado. The objection was overruled. The judge said that Rosado's statements were necessary to provide context to Babbitt's requests that Rosado keep quiet.

b. *The right to confrontation and the adoptive admissions exception to the hearsay rule.* The defendant claims that the admission of Rosado's statements violated his right to confront witnesses guaranteed by both the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights.

In *Ohio* v. *Roberts*, 448 U.S. 56, 66 (1980), the Supreme

Court made clear that the admission of hearsay statements in criminal trials does not violate the Sixth Amendment when the statements are introduced under a "firmly rooted" exception to the hearsay rule. "Admission under a firmly rooted hearsay exception satisfies the constitutional requirement of reliability because of the weight accorded longstanding judicial and legislative experience in assessing the trustworthiness of certain types of out-of-court statements." *Idaho* v. *Wright*, 497 U.S. 805, 814, 817 (1990). "[S]tatements admitted under a 'firmly rooted' hearsay exception are so trustworthy that adversarial testing would add little to their reliability." *Id.* at 821. See *Mattox* v. *United States*, 156 U.S. 237, 241-242 (1895), quoting *Commonwealth* v. *Richards*, 18 Pick. 434, 437 (1837); *Commonwealth* v. *Gallo*, 275 Mass. 320, 331 (1931) (evaluating constitutionality under art. 12 of hearsay exception for prior testimony of unavailable declarant by examining history of exception).

The statements challenged by Babbitt fall within a well-established exception to the hearsay rule, the exception for adoptive admissions. That exception applies to any statement made in the presence of the defendant to which the defendant's response — whether by oral declaration, by gesture, or by revealing silence — objectively denotes the defendant's acceptance of the statement. Statements to which a defendant orally replies lie within the core of this hearsay exception. Such statements are admissible to lend "meaning and effect" to the defendant's replies. *Commonwealth* v. *Kenney*, 12 Met. 235, 237 (1847). See *Commonwealth* v. *MacKenzie*, 413 Mass. 498, 506 (1992).

The adoptive admissions exception also includes statements to which the defendant responds by silence. "Since *Bruton*, we have recognized that no violation of the confrontation clause occurs" when admissions by silence are used in evidence. *Commonwealth* v. *Brown*, 394 Mass. 510, 515 (1985). Because silence may mean something other than agreement or acknowledgment of guilt (it may mean inattention or perplexity, for instance), evidence of adoptive admissions by silence must be received and applied with caution. See, e.g., *id.*, quoting *Commonwealth* v. *Boris*, 317 Mass. 309, 317 (1944); *Larry* v. *Sherburne*, 2 Allen 34, 35 (1861). Hence adoption by silence can be imputed to a defendant only for statements that "clearly would have produced a reply or denial on the part of an innocent

person." *Commonwealth* v. *Brown, supra* at 515. See *Commonwealth* v. *Olszewski*, 416 Mass. 707, 719 (1993), cert. denied, 513 U.S. 835 (1994) ("As foundation for the evidence, it must be apparent that the party has heard and understood the statement, that he had an opportunity to respond, and that the context was one in which he would have been expected to respond to an accusation"); *Commonwealth* v. *Boris, supra* at 317-318; *Commonwealth* v. *Kenney, supra.*

Babbitt contends that the hearsay exception for adoptive admissions is not firmly rooted. We disagree. Commentators and courts appear to have recognized early in our history that adoptive admissions are little more than a special case of voluntary admissions by parties. Party admissions "are routinely offered into evidence against the maker of the statement and carry a distinguished heritage confirming their admissibility when so used." *Lilly* v. *Virginia*, 527 U.S. 116, 127 (1999) (plurality opinion) (citing authorities from Eighteenth and Nineteenth Centuries).[4]

Admissions by silence were commonly introduced as evidence by the early Nineteenth Century, though not always with the caution that our cases require. See W. Wyche, The Practice of the Supreme Court of Judicature of the State of New York in Civil Actions 161 (1794); T. Peake, Evidence 11

---

[4]Some authorities argue that, because party admissions are not in fact hearsay, the use in evidence of such admissions "raises no Confrontation Clause concerns." *United States* v. *Inadi*, 475 U.S. 387, 398 n.11 (1986), quoting *Tennessee* v. *Street*, 471 U.S. 409, 414 (1985) (suggesting that because "many co-conspirator statements are not introduced to prove the truth of the matter asserted, and thus do not come within the traditional definition of hearsay . . . some of the out-of-court statements in this case presumably could be admitted without implicating the Confrontation Clause"). "Admissions by a party-opponent," including adoptive admissions, "are excluded from the category of hearsay on the theory that their admissibility in evidence is the result of the adversary system rather than satisfaction of the conditions of the hearsay rule." Advisory Committee's Notes to Fed. R. Evid. 801, 28 U.S.C. app. 137-138 (1984), cited in P.J. Liacos, Massachusetts Evidence § 8.8.1, at 497 (7th ed. 1999). See Fed. R. Evid. 801(d) ("A statement is *not hearsay* if . . . [2] [t]he statement is offered against a party and is . . . a statement of which [the party] has manifested an adoption or belief in its truth . . ." [emphasis added]); 2 McCormick, Evidence § 254, at 136-137 (5th ed. 1999); *United States* v. *United Shoe Mach. Corp.*, 89 F. Supp. 349, 352 (D. Mass. 1950).

(1802).[5] In *Commonwealth* v. *Call*, 21 Pick. 515, 522 (1839), this court affirmed a conviction obtained on evidence of an adoptive admission, and suggested that, even had the defendant not adopted the statement by assenting to it but instead stood silent after it was made in his presence, his assent could thereby be implied. See *Commonwealth* v. *Kenney, supra.* Early decisions of other jurisdictions to the same effect include *Turner* v. *Yates,* 57 U.S. (16 How.) 14, 27 (1853); *Batturs* v. *Sellers,* 5 H. & J. 117 (Md. 1820); *State* v. *Perkins,* 10 N.C. (3 Hawks) 377 (1824); *Vincent* v. *Lessee of Huff,* 8 Serg. & Rawle 381, 388 (Pa. 1822); and *Hendrickson* v. *Miller,* 8 S.C.L. (1 Mill) 296, 300-301 (1817).

The hearsay exception for adoptive admissions, including admissions by silence, is firmly rooted. Not only is the exception at least two centuries old, but the exception is recognized in the Federal Rules of Evidence, see Advisory Committee's Notes to Fed. R. Evid. 801, 28 U.S.C. app. 137-138 (1984) (admissions by silence are among the manifestations of adoption or acquiescence contemplated by rule 801[d][2][B]), and in the law of many, if not most, of the States. See, e.g., 4 J. Wigmore, Evidence §§ 1071-1072, at 519-523 (Supp. 1999) (citing cases, rules, and statutory provisions). Cf. *White* v. *Illinois,* 502 U.S. 346, 355 n.8 (1992).[6]

The statements made by Rosado fall within the adoptive

---

[5]For additional early acknowledgment of the use in evidence of admissions by silence, see 4 W. Blackstone, Commentaries 368 (St. George Tucker, ed., 1803); 5 W. Blackstone, Commentaries, *supra* at 356, 360; Greenleaf, Evidence §§ 169, 197, 199, 215 (2d ed. 1844); 1 S.M. Phillipps, Evidence 99-100 (6th ed. 1824); 2 I. Espinasse, Actions and Trials at Nisi Prius 784 (2d Am. ed. 1801) ("what a party has himself been heard to say respecting the matter in dispute, is good evidence against himself; . . . so are conversations which have passed in the hearing of the party respecting the matters in difference, and which were uncontradicted or admitted by him, good evidence; as is the constant practice at Nisi Prius"); R. Phillips, On the Powers and Duties of Juries 157 (1811), cited in 30A C.A. Wright & K.W. Graham, Jr., Federal Practice and Procedure § 6355, at 26 & n.161 (2000).

[6]In *Ohio* v. *Roberts,* 448 U.S. 56 (1980), the Court used language that could be read to require that hearsay evidence, even when introduced under a firmly rooted exception to the hearsay rule, must be accompanied by a showing that the hearsay declarant is unavailable. *Id.* at 65, 66. Subsequent decisions have made clear that this "unavailability" requirement does not apply to the use in evidence of adoptive admissions and other statements made outside judicial proceedings. See *White* v. *Illinois,* 502 U.S. 346, 354 (1992); *United States* v. *Inadi,* 475 U.S. 387, 394 (1986); *Commonwealth* v. *Whelton,* 428 Mass. 24,

Commonwealth *v.* Babbitt.

admissions exception.[7] Babbitt took an active part in some of the conversations during which the statements were made, both by direct oral replies and by gestures (for instance, motioning to Rosado to keep quiet). "The defendant was engaged knowingly and voluntarily in a conversation with another, and what was said and done by each in the other's presence, bearing on a material issue in the case, was admissible." *Commonwealth* v. *Simpson*, 370 Mass. 119, 123 (1976).[8] See also *Commonwealth* v. *Jones*, 400 Mass. 544, 547 (1987); *Commonwealth* v. *Kruah*, 47 Mass. App. Ct. 341, 344-345 (1999), and cases cited (jury entitled to interpret defendant's equivocal replies to statements of others by considering hearsay evidence of those statements). There was no error.

The "highly incriminating" statements to which Babbitt responded only by silence were also correctly admitted. The statements "clearly would have produced a reply or denial on the part of an innocent person." *Commonwealth* v. *Brown*, 394 Mass. 510, 515 (1985). Rosado's conversation with Maloney on the bus appears to be the exception, as there is no indication the defendant heard Rosado's statements. Cf. *Commonwealth* v. *Reynolds*, 338 Mass. 130, 135 (1958) ("There could be, however, no implied admission by Reynolds of Valcourt's statements about the latter's own conduct of which it was not shown

28 (1998); *Commonwealth* v. *Jones*, 400 Mass. 544, 547 (1987).

It is probable in any event, although the record is not clear on this point, that Rosado was unavailable to testify at Babbitt's trial, which commenced several weeks after Rosado had been convicted. Because Rosado was entitled to appeal from his conviction, he would also have been entitled to invoke his Fifth Amendment right against self-incrimination at Babbitt's trial. Such an invocation would have made him unavailable for purposes of the *Roberts* requirement. See *Commonwealth* v. *Canon*, 373 Mass. 494, 499-500 (1977), cert. denied, 435 U.S. 933 (1978); *Commonwealth* v. *Alvarado*, 36 Mass. App. Ct. 604, 607 (1994).

[7]We assume for purposes of decision that the statements challenged on appeal sufficiently identified Babbitt to implicate the confrontation clauses. Cf. *Commonwealth* v. *Santiago*, 30 Mass. App. Ct. 207, 215-216 (1991).

[8]In *Commonwealth* v. *Brown*, 394 Mass. 510, 515 (1985), we held that statements constituting adoptive admissions were admissible even though the witnesses who repeated the statements were not certain which of two defendants had made them. Because "both defendants were present when each statement was made," we said, the jury might have been able to find that "each statement at issue either was made by Roach and constituted an admission, or was made by Brown and was impliedly adopted by Roach." *Id.* In this case, by contrast, most of the witnesses at issue had no difficulty identifying Rosado as having made the various statements to which Babbitt objects on appeal. Bilsborough is the one apparent exception.

Reynolds had direct knowledge"). As there was no objection, we review to determine whether any error created a substantial risk of a miscarriage of justice. Rosado's statement on the bus was "merely cumulative" of the "much more impressive" assemblage of statements by Babbitt himself and of other damning evidence — such as the eyewitness testimony of Hall and Nelson — that the Commonwealth adduced at trial to convince the jury of Babbitt's guilt. See *Commonwealth* v. *Diaz,* 426 Mass. 548, 552 (1998). See also *Commonwealth* v. *MacKenzie,* 413 Mass. 498, 510 (1992). The same could apply if the admission of all five statements had been error. A new trial could not be required because any error would have been harmless beyond a reasonable doubt.[9]

Article 12 does not compel a different result. Babbitt argues that art. 12 required the judge to make an explicit finding that Rosado's statements were particularly trustworthy. However the confrontation clauses of the Sixth Amendment and of art. 12 might differ — and we have said that the two clauses are "equivalent," *Commonwealth* v. *Childs,* 413 Mass. 252, 260 (1992) — the differences would have no relevance to the outcome of this case.

We have considered the entire record pursuant to our obligation under G. L. c. 278, § 33E. We discern no basis for affording relief of any kind to the defendant. Overwhelming evidence shows that Babbitt was guilty of a brutal and vicious murder.

*Judgment affirmed.*

---

[9]Because Babbitt's trial counsel referred to the confrontation clauses in objecting to Robinson's testimony, it is clear that we review any error in the admission of this testimony for whether it was harmless beyond a reasonable doubt. See *Commonwealth* v. *Adams,* 416 Mass. 55, 58 (1993). The attorney did not state the ground of his objection to Dolan's testimony. Assuming, without deciding, that this general objection "sufficiently apprised the judge of the grounds on which it was based, and was therefore sufficient to preserve the question for review," *Commonwealth* v. *Cancel,* 394 Mass. 567, 574 (1985), we also review any error in the admission of Dolan's testimony for whether it was harmless beyond a reasonable doubt.

Because Babbitt did not object at trial to the other three statements that he challenges on appeal, we review the admission of those statements for whether they caused a substantial likelihood of a miscarriage of justice. See *Commonwealth* v. *Brown, supra* at 515. .