COMMONWEALTH vs. THOMAS R. ESTEP.

No. 93-P-366.

Bristol. September 14, 1994. - May 9, 1995.

Present: SMITH, GILLERMAN, & IRELAND, JJ.

*Evidence*, Expert opinion, Photograph, Admissions and confessions, Hearsay, Relevancy and materiality. *Constitutional Law*, Admissions and confessions. *Practice, Criminal*, Voluntariness of statement. *Malice. Intoxication.*

At a murder trial there was no error in the judge's allowing a qualified chemist to give his expert opinion that a painted woodchip matched the wood on an axe handle, and, in any event, the defendant demonstrated no prejudice inasmuch as the chemist had already testified that the paint on the chip matched the paint on the axe handle. [504-505]

The judge at a murder trial properly admitted, in his discretion, two autopsy photographs of the victim's body that were relevant to the issue of extreme atrocity or cruelty. [505-506]

The judge at a murder trial correctly denied the defendant's motion to suppress the statement he gave to police and correctly instructed the jury on the issue of the voluntariness of the statement. [506-507]

At a murder trial the judge correctly instructed the jury on malice. [507-508]

At a murder trial there was no error in the judge's exclusion of certain hearsay evidence offered by the defendant or in the admission of certain other relevant evidence and testimony. [508]

INDICTMENT found and returned in the Superior Court Department on November 15, 1989.

A pretrial motion to suppress evidence was heard by *Gerald F. O'Neill, Jr.*, J., and the case was tried before *Robert S. Prince*, J.

*David Hayes Erickson* for the defendant.

*Mary O'Neil*, Special Assistant District Attorney, for the Commonwealth.

SMITH, J. The defendant was the subject of an indictment charging him with murder in the first degree. After a jury trial he was convicted of murder in the second degree. On

appeal the defendant raises several issues, some of which we think require more analysis than others.

The evidence warranted the jury in finding the following facts. On November 10, 1989, the defendant, the victim, and the victim's sixteen month old daughter lived in a third-floor apartment in Fall River. At approximately 8:00 A.M., on November 10, the defendant discovered the victim's body in a bedroom, lying sideways on the bed, fully clothed, with her feet touching the floor on the side of the bed. The defendant had slept on the couch in the living room the previous evening. The police were called to come to the apartment.

When the police arrived, they discovered that the victim was dead. She had multiple bruises on her arms, legs and face, including swelling of her left eye, a one-half inch bruise on the bridge of her nose and smaller contusions to the left eye.

The autopsy revealed at least six bruises under her scalp. One-quarter cup of blood surrounded her brain. Blood was also found between the skull cap and her brain. The presence of blood indicated trauma; the victim's brain had shifted in the cranial cavity causing tearing and some shearing effects. The cause of death was multiple blunt impact injuries of the head and neck.

The police investigation disclosed that the previous evening, the defendant, the victim, and some neighbors had had a party at the defendant's apartment. At some point the defendant stated that the guests could not have any more beer because there were only a few left. Despite his remark the victim took a beer from the refrigerator and gave it to one of the male guests, asking if "he had anything for her." The defendant walked over to the victim and gave her a "little slap" and told her to calm down. A short time later the guests left. Later, the neighbors heard loud voices and banging coming from the defendant's apartment. The banging continued throughout the night. It sounded like someone being thrown against the wall.

The defendant gave a statement to the police. He stated that after the guests left, he confronted the victim about the

incident with the male guest. He began to slap her around the kitchen. The victim fought back and kicked the defendant several times in the groin area. The defendant then threw the victim against the wall in the kitchen several times until the victim laid down on the floor. He observed blood coming out of her nose and mouth. The defendant then went into the living room and fell asleep on the couch. Although the defendant could not remember hitting the victim with an object or axe handle, he told the police he "probably" did.

1. *The defendant's challenge to the admission of certain evidence.* On appeal, the defendant claims, among other things, that the judge committed error in admitting certain evidence.

a. *Admission of expert's opinion.* A woodchip was found on the bedroom floor between the victim's feet. An axe handle was also discovered in the bedroom. A chemist for the Department of Public Safety offered an expert opinion, without objection, that the paint on the woodchip matched the paint on the axe handle. The chemist was then asked whether, in his opinion, the wood on the wood chip matched the wood of the axe handle. Over an objection the chemist answered that in his opinion the wood matched. The defendant claims that the judge abused his discretion in allowing the chemist to offer his opinion as to the matching aspects of the wood. There was no error.

The expert was qualified as a chemist. "In qualifying an expert witness, the question for judicial decision is whether the witness has sufficient skill, knowledge, and experience in the area of his training to aid a jury . . . . There is no requirement that testimony on a question of discrete knowledge come from an expert qualified in that subspecialty rather than from an expert more generally qualified." *Commonwealth* v. *Mahoney*, 406 Mass. 843, 852 (1990) (testimony of chemist that substance on victim's shirt and defendant's footwear was consistent with "residual stomach contents," was admissible although expert had no particular training in chemical analysis of same; chemist in *Mahoney* was same chemist as in this matter).

Even if there was error, the defendant was not prejudiced. The defendant did not object when the expert matched the paint on the wood chip with that on the axe handle. By that testimony, the connection between the two had already been made.

b. *Admission of autopsy photographs.* The defendant claims that the judge committed error in allowing in evidence two photographs taken at the autopsy. The photographs depict the victim's brain and show numerous bruises on that organ.

The defendant was accused of committing murder with extreme atrocity or cruelty and with premeditation and deliberation. "It is well settled in a case such as the present one . . . that photographs indicating the force applied and portraying the injuries inflicted may properly be admitted on the issue of whether the murder was committed with extreme atrocity or cruelty, as well as on the issue of premeditation and deliberation." *Commonwealth* v. *Ramos*, 406 Mass. 397, 406-407 (1990). It is also well settled that "if the photographs possess evidential value on a material matter, they 'are not rendered inadmissible solely because they are gruesome or may have an inflammatory effect on the jury.' *Commonwealth* v. *Bys*, [370 Mass. 350, 358 (1976)]." *Commonwealth* v. *Ramos*, 406 Mass. at 407.

"The admissibility of photographic evidence is left to the discretion of the trial judge, and we will overturn the judge's decision only where a defendant is able to bear the heavy burden of demonstrating an abuse of that discretion." *Commonwealth* v. *Simmons*, 419 Mass. 426, 430 (1995), quoting from *Commonwealth* v. *Waters*, 399 Mass. 708, 715 (1987).

Here, the circumstances concerning the admission of the two autopsy photographs are similar to those in *Commonwealth* v. *Gallagher*, 408 Mass. 510, 519 (1990), where "[a]fter a lengthy bench conference, the judge declared admissible a number of photographs of the victim's body, including one taken during the autopsy and showing the interior of the victim's skull with the brain matter removed." *Id.* at 519. "All [the disputed photographs] were relevant to

whether the murder was committed with extreme atrocity or cruelty, which was at issue . . . . As to the autopsy photograph of the skull interior, the judge admitted it only after a 'careful assessment.' " *Ibid.*, quoting from *Commonwealth* v. *Bastarche*, 382 Mass. 86, 106 (1980). "The photograph clarified the nature and extent of the victim's several head injuries in a way that the other photographs did not." *Ibid.* See also *Commonwealth* v. *Blake*, 409 Mass. 146, 160 (1991).

Here, the judge held a voir dire and carefully examined all of the photographs of the victim's body, including the autopsy photographs. As a result, the judge excluded eleven photographs. Before admitting the autopsy photographs, the judge found that they would be helpful to the jury because the photographs showed six subcutaneous hemorrhages located under the victim's scalp and not apparent in photographs of her head. See *Commonwealth* v. *Vazquez*, 419 Mass. 350, 354 (1995). The fact that the defendant "stipulated" to the injuries does not make the photographs inadmissible. It was still a contested point whether the murder was committed with extreme atrocity or cruelty. *Commonwealth* v. *Bastarache, supra.* Further, we note that the judge gave strong instructions to the jury at the time that he admitted the autopsy photographs in evidence as to their proper role and warned them not to be "inflamed" against the defendant. We also note that the jury in their verdict rejected the Commonwealth's theory that the defendant committed first degree murder with extreme atrocity or cruelty, and instead found him guilty of second degree murder.

c. *The admission of the defendant's statement.* The defendant filed a motion to suppress the statement that he gave to the police on the grounds that his rights relative to the Miranda warnings had not been scrupulously observed and that he had not voluntarily waived his Miranda rights. The defendant also claimed that his statement was involuntary. After an evidentiary hearing, a Superior Court judge filed a memorandum of decision in which he denied the defendant's suppression motion. The judge ruled the defendant's rights relative to the Miranda warnings were scrupulously observed

and that the defendant knowingly, intelligently, and voluntarily waived the rights covered by the warnings. The judge also concluded that the statements were the product of a rational intellect and a free will and were voluntary.

It is clear from the record that the judge addressed all of the issues raised in the defendant's motion, in particular the defendant's claim that he has limited intellectual capacity.

The defendant's argument on appeal amounts to no more than a claim that the motion judge did not accept his version of the facts. Where there is conflicting testimony, "[t]he determination of the weight and credibility of the testimony is the function and responsibility of the judge who saw and heard the witness, and not of [an appellate] court." *Commonwealth* v. *Harmon*, 410 Mass. 425, 431 (1991), and cases cited.

We are aware that in order to fulfill our appellate function we must "make an independent determination about the correctness of the judge's application of constitutional principles to the facts as found." *Commonwealth* v. *Williams*, 388 Mass. 846, 851 (1983). We have examined the record and conclude that the motion judge did not commit error in denying the defendant's suppression motion. The defendant's claim that the trial judge did not instruct the jury that the Commonwealth must prove that the statements made by the defendant were voluntary beyond a reasonable doubt is without merit.[1]

2. *Other issues.* The other issues raised by the defendant do not require extended discussion. The judge's instructions,

---

[1]The defendant also claims that it was error to allow in evidence portions of the responses that he made to police questions. In particular, he argues his responses were equivocal when asked if "it was possible [he] struck the [victim] with an object," he responded "Probably" and later when asked "Could you have possibly struck [the victim] with that ax handle?" The defendant responded, "Probably. I don't remember it though."

There was no error. "[E]quivocal statements by a criminal defendant are generally admitted in evidence." *Commonwealth* v. *Valliere*, 366 Mass. 479, 488 (1974). Where, as here, the defendant makes an equivocal response to the officer's accusation, both the accusation and the response are admissible as an admission. Liacos, Massachusetts Evidence at 595 n.10 (6th ed. 1994).

on third-prong malice, which were not subject to an objection, were in accord with *Commonwealth* v. *Delaney*, 418 Mass. 658, 666 (1994), and *Commonwealth* v. *Sama*, 411 Mass. 293, 298 (1991). The judge's instructions concerning the relevance of the defendant's intoxication on the issue of malice were also adequate in the circumstances present here. *Commonwealth* v. *Pierce*, 419 Mass. 28, 39 (1994).

The exclusion of the defendant's testimony referring to the statement of the victim's ex-husband was not error. The statement was clearly hearsay and, in addition, not relevant. Certainly, the defendant's case does not "present[ ] the type of rare and unique circumstances in which the exclusion of evidence under hearsay rules defeats the ends of justice and thereby violates the due process clause." *Commonwealth* v. *Drew*, 397 Mass. 65, 72 (1986). The introduction of envelopes and a bumper sticker and testimony that the defendant's large pitbull dog prevented emergency medical technicians and the police from entering the defendant's apartment were relevant. On the latter point, the defense implied that someone else (the victim's ex-husband) had killed the victim. Testimony that the dog blocked entry of the technicians and the officer was relevant as to whether someone else would have been allowed to gain access to the apartment and kill the victim.

The other issues — whether the prosecutor committed error in his closing statement, whether the defendant's trial counsel was ineffective and whether the single justice of this court committed error in denying the defendant's request to submit a brief more than fifty pages — on this record border on the frivolous.

In sum, we have examined all the issues and hold that none has merit.

*Judgment affirmed.*