## COMMONWEALTH *vs.* ANTHONY KRUAH.

No. 97-P-2164.

Suffolk. January 14, 1999. - July 21, 1999.

Present: JACOBS, SMITH, & SPINA, JJ.

*Rape. Constitutional Law,* Assistance of counsel. *Practice, Criminal,* Assistance of counsel, Duplicative convictions. *Evidence,* Relevancy and materiality, Admissions and confessions, Fresh complaint.

A criminal defendant convicted of rape did not demonstrate that his trial counsel provided ineffective assistance by failing to object to an assertedly equivocal apology to the victim [344-345], by allegedly failing to object to an adoptive admission of the defendant that was properly admitted in evidence [345-346], or by failing to move in limine for the exclusion of fresh complaint testimony that was properly admitted with appropriate instructions to the jury [346-347].

Where a conviction of assault with intent to rape was a lesser included offense of a conviction of rape, the conviction and sentence on the lesser offense was duplicative; the matter was remanded for resentencing on the rape conviction only. [347-348]

INDICTMENT found and returned in the Superior Court Department on May 18, 1994.

The case was tried before *David M. Roseman*, J.

*Dennis M. Powers* for the defendant.

*Joseph M. Makalusky*, Assistant District Attorney, for the Commonwealth.

SPINA, J. A Superior Court jury found the defendant guilty of rape, assault with intent to commit rape, and threatening to commit an assault and battery.[1] On appeal, the defendant claims trial counsel was ineffective because he (1) failed to object to the admission in evidence of an equivocal statement made by the defendant; (2) failed to object to an adoptive admission at-

---

[1] The conviction for threats was placed on file with the defendant's consent, and therefore is not before us. *Commonwealth* v. *Ford*, 424 Mass. 709, 713 n.2 (1997).

tributed to the defendant; and (3) failed to move in limine to preclude certain fresh complaint testimony. We affirm.

We summarize the evidence. The defendant and the victim lived in the same apartment building on Cheney Street in Boston. The victim had become friendly with the defendant's wife. All three had immigrated from the county of Nimba, Liberia, and were involved in a Liberian community group in Boston known as United Nimba Citizens' Council (UNICO).

One afternoon in January, 1992, the defendant appeared at the victim's apartment and asked to discuss a UNICO matter. The victim had been eating lunch, and invited him to sit in the living room. She finished her lunch as the defendant talked. When she stood to go to the kitchen, the defendant knocked her down from behind and tried to remove her pants. She resisted, biting him several times. The defendant managed to get on top of her, and choked her. He pulled her pants down part way, and digitally raped her. The victim reached for her dinner knife, then stabbed him in the chest. When he released his hold, she ran to the kitchen. Wielding a larger knife obtained in the kitchen, she drove the defendant from her apartment.

Upset, the victim telephoned her best friend, Macra Karter, who went right over to the victim's apartment. The victim related what the defendant had done to her, and that she had stabbed him. She told Karter she was going to call the police. Karter, also from Liberia and a member of UNICO, told her to forget about the incident and begged her not to go the court at the risk of bringing disgrace upon herself. The victim did not call the police.

Two days later, as Karter was walking to the victim's apartment, the defendant approached her, and together they entered. Karter noticed some bite marks on the defendant, so she pressed him for an explanation. He raised his shirt, exposing more wounds, and laughingly suggested that she ask the victim, who was present, how he got them. Pressed further, the defendant offered a Liberian expression, translated as "if luck is not in your face, it is in your strength." He then laughed and bragged about the rape, saying he was "not going to rest until [he] g[o]t" her.

Over the course of the next several months, the defendant seized several opportunities to pat the victim's buttocks and tell her that he liked her body. He often telephoned her, and he tampered with the locks on her door. She complained about the

defendant's conduct to Thomas Grupee, president of the Liberian Community Association of Massachusetts and a member of UNICO's board of directors. The victim also told Grupee that the defendant had tried to rape her. Grupee told her not to make an issue of it, as these problems are "traditionally . . . shameful." Nonetheless, Grupee confronted the defendant about the victim's complaint. The defendant told Grupee that the victim was his girlfriend, and that she was making much of nothing. He admitted that, once, she started to cry while they were having sex, and accused him of taking advantage of her. Grupee counseled him not to discuss the matter publicly, for the victim's sake. The defendant continued to contact the victim.

In January, 1993, the defendant and the victim became enmeshed in a vitriolic argument over a parliamentary matter during a UNICO meeting. The defendant had been elected UNICO's president in June, 1992, and he refused to recognize her to speak during the January meeting. A special meeting of UNICO was convened in April, 1993, to seek resolution of ongoing problems between them, seemingly unrelated to the rape. Community elders asked the victim to explain the problems. Aware of the Liberian cultural prohibition against public accusations of rape, the victim nevertheless told the elders that the defendant had raped her. The elders responded by denouncing her for having made the accusation. To hold their attention, she spoke of the incident as the defendant's desire to have sex with her rather than accuse him of rape, and proceeded to relate all the details. The elders asked the defendant for his response, and he denied the allegation. One of the elders, a friend of the defendant, referring to the stab wound, proposed that "if what she is saying is not true, then take off your shirt." The defendant refused. The elders laughed, and asked the defendant to apologize to the victim "for the commotion that had been going on between" them. Initially refusing to apologize, he eventually came around, saying, "Okay, I'm sorry." The elders toasted the peace that had been achieved, and told the victim and the defendant to get on with their lives. They told the victim to discuss the incident no further because it could create trouble for the defendant and disgrace their country back home, as well as their new country.

Disappointed that the elders had not treated her complaint with greater seriousness, the victim resigned from UNICO. The defendant continued to pursue her. She discussed the matter

again with Grupee, who conceded that it could not be resolved within the community. She told him she would report the rape to the police. The victim received calls from numerous members of UNICO urging her not to involve the police. The defendant threatened her with deportation because she did not have a green card, and said she would not be believed if she went to the police. He also threatened to have her killed. She eventually went to the police, at the expense of being ostracized from her community.

1. The defendant first argues that counsel should have objected to the testimony regarding his apology at the April, 1993, meeting on the ground that the apology was equivocal, and, therefore, according to the defendant, inadmissible. There was evidence that several problems were discussed at the meeting, including his intentional misdelivery of a package to the victim's family in Liberia, his refusal to recognize her to speak at the January meeting, and the rape. The elders' request for an apology did not specify any particular wrong. The defendant's contention that the apology was so attenuated, *Commonwealth v. Gilbert*, 423 Mass. 863, 871 (1996), as to lack relevance, *Commonwealth v. Morgan*, 422 Mass. 373, 379 (1996), is without merit.

To establish ineffective assistance of counsel, a defendant must prove "serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth v. Saferian*, 366 Mass. 89, 96 (1974). That is, the defendant must show "that better work might have accomplished something material for the defense." *Commonwealth v. Satterfield*, 373 Mass. 109, 115 (1977).

"[E]quivocal statements by a criminal defendant are generally admitted in evidence." *Commonwealth v. Estep*, 38 Mass. App. Ct. 502, 507 n.1 (1995), quoting from *Commonwealth v. Valliere*, 366 Mass. 479, 488 (1974). The apology, even if equivocal, was properly admitted. *Commonwealth v. Earltop*, 372 Mass. 199, 201-202 (1977). *Commonwealth v. McGrath*, 351 Mass. 534, 538 (1967). See Liacos, Massachusetts Evidence § 8.8.5, at 472 (6th ed. 1994 & Supp. 1999). Whether the apology encompassed the rape was a question for the jury. See *Commonwealth v. Pearce*, 427 Mass. 642, 648 (1998). Counsel

was not ineffective for failing to object to the proper admission of the defendant's statements. See *Commonwealth* v. *Alvarez*, 422 Mass. 198, 211 (1996).

Even if the apology were improperly admitted, the defendant failed to show that an objection would have "accomplished something material for the defense." *Ibid.*, quoting from *Commonwealth* v. *Satterfield*, 373 Mass. at 115. The apology was merely cumulative of the defendant's more detailed admission to Grupee that the victim accused him of taking advantage of her and started to cry while they were having sex, as well as the statements he made to Macra Karter two days after the rape.

2. The defendant next argues that counsel's failure to object to evidence of his refusal during the April, 1993, meeting to raise his shirt to permit UNICO board members to see if he had a scar where the victim said she stabbed him, permitted the jury to consider an adoptive admission for which there was insufficient foundation. The record indicates that while counsel did not object, she preserved the issue by opposing admission of the evidence during a lengthy side bar conference, maintaining that "if he refused to raise his shirt that is not an admission of guilt." See Mass.R.Crim.P. 22, 378 Mass. 892 (1979).

Even were we to conclude that counsel did not properly object, the evidence was properly admitted. "Where a party is confronted with an accusatory statement which, under the circumstances, a reasonable person would challenge, and the party remains silent or responds equivocally, the accusation and the reply may be admissible on the theory that the party's response amounts to an admission of the truth of the accusation." *Commonwealth* v. *Olszewski*, 416 Mass. 707, 718 (1993), cert. denied, 513 U.S. 835 (1994), quoting from *Commonwealth* v. *MacKenzie*, 413 Mass. 498, 506 (1992). "As foundation for the evidence, it must be apparent that the party has heard and understood the statement, that he had an opportunity to respond, and that the context was one in which he would have been expected to respond to an accusation," *id.* at 719, and the party must not be under arrest or have received the *Miranda* warnings. *Commonwealth* v. *Ferrara*, 31 Mass. App. Ct. 648, 652 (1991). The evidence suggests that the defendant was an active and vocal participant at the April meeting. He was among friends, and had been president of UNICO approximately nine months. He denied raping the victim, and where it was proposed that he settle the credibility impasse by

exposing his chest to inspection for the presence, or absence, of a scar, it would have been natural for him to oblige if he could vindicate himself so easily. See *Commonwealth* v. *Brown*, 394 Mass. 510, 515 (1985). In the circumstances, it was within the judge's discretion to admit evidence of his refusal as an adoptive admission by silence.

Even were we to conclude that the evidence was inadmissible, the defendant concedes that in light of the admissions he made to Karter and Grupee, and his exposure of his wound to Karter, the refusal evidence was merely cumulative. *Commonwealth* v. *MacKenzie*, 413 Mass. at 510. As such, there was no substantial risk of a miscarriage of justice, and therefore no ineffective assistance of counsel. *Commonwealth* v. *Bart B.*, 424 Mass. 911, 914 (1997).

3. The defendant finally contends that counsel was ineffective for failing to move in limine to preclude admission of Grupee's fresh complaint testimony regarding the victim's accusation of rape during the April, 1993, meeting, on the ground that the accusation, made some fifteen months after the rape, was not "fresh." *Commonwealth* v. *Licata*, 412 Mass. 654, 660 (1992). The defendant does not challenge the admissibility of Karter's fresh complaint testimony of the victim's disclosure made within an hour of the rape, or Grupee's fresh complaint testimony of the victim's statement to him several months thereafter.

The "fresh complaint doctrine is justified on the ground that a victim's failure to make prompt complaint might be viewed by the jury as inconsistent with the charge of sexual assault." *Commonwealth* v. *Bailey*, 370 Mass. 388, 392 (1976). "[A]dmission of testimony of fresh complaint anticipates to some extent the inference of consent, or of merely imagined assault." *Id.* at 394. Whether a complaint qualifies under the doctrine depends upon whether it was reasonably prompt under the circumstances, and the determination to admit such evidence rests in the sound discretion of the trial judge. See *Commonwealth* v. *Montanino*, 409 Mass. 500, 508 (1991). Circumstances that have traditionally justified delayed reporting include the victim's age and relationship to the defendant; the defendant's knowledge of the location of the victim's residence; and the victim's feelings of shame, fear, intimidation, guilt, and belief that the complaint will not be believed or treated seriously. *Id.* at 509-510. *Commonwealth* v. *Hyatt*, 31 Mass. App. Ct. 488, 491 (1991). The types of feelings that we have recognized as suppressing reasonably prompt outcry are present in the circumstances of this case.

The defendant held a position of leadership and respect in their community. The community demanded that problems between members be resolved within the community, then failed to take the victim seriously. She was warned that publication of her complaint would bring shame and disgrace upon them as well as upon her and the defendant. The elders rebuffed her for making forbidden accusations of rape, and would only consider her complaint if she recast it as unwanted advances. It was appropriate for the jury to witness and consider the strong hold community mores had upon the victim from the moment she complained to Macra Karter, and the duration of her struggle against them before breaking free to complain to the police, who were outsiders. The defendant also made her fear being disbelieved by the police because she had no green card, and threatened that she would be deported to their war-torn homeland. He also threatened her life. The evidence went to the reasonableness of her delay in reporting to the police, as well as to the community. The judge acted within his discretion in admitting this evidence under the fresh complaint doctrine, and the jury were properly instructed as to whether and how they could consider it. *Commonwealth* v. *Montanino*, 409 Mass. at 510-511.

Since any motion in limine, or objection, would have been futile, counsel was not ineffective for not having tried. *Commonwealth* v. *Cohen*, 412 Mass. 375, 392 (1992). The testimony, which was merely a bland summary of the victim's more graphic account, and less detailed than other fresh complaint testimony, was only cumulative and did not likely prejudice the defendant or create a substantial risk of miscarriage of justice. See *Commonwealth* v. *Lavalley*, 410 Mass. 641, 645 (1991); *Commonwealth* v. *Moreschi*, 38 Mass. App. Ct. 562, 566-567 (1995).

4. The Commonwealth, commendably, suggests that the defendant must be resentenced because he was convicted of rape and assault with intent to commit rape based upon the same evidence, and received consecutive sentences. *Commonwealth* v. *Sanchez*, 405 Mass. 369, 382 (1989). We agree.

The crime of assault with intent to rape is a lesser included offense of rape. See *Commonwealth* v. *Creadon*, 162 Mass. 466, 467 (1894) (where evidence tends to prove the defendant actually committed rape, his conviction on a charge of assault with intent to rape affirmed); *Commonwealth* v. *Achorn*, 25 Mass.

App. Ct. 247, 251 (1988) (assault with intent to rape said in dictum to be a lesser included offense of rape). See also Nolan & Henry, Criminal Law § 235, at 172 n.1 (2d ed. 1988). The convictions arose from evidence of the same acts, and the jury were not instructed that proof of discrete acts was required for convictions on the two indictments. The convictions are likely duplicative, and the defendant may not be sentenced for both offenses. *Commonwealth* v. *Sanchez, supra* at 381-382. We have authority to correct this error even if the defendant did not raise the issue. *Ibid.*

Where a defendant received a duplicative sentence on a lesser included offense, the judgment should be affirmed as to the greater offense and vacated as to the lesser. See, e.g., *Commonwealth* v. *Jones*, 382 Mass. 387, 395-397 (1981); *Commonwealth* v. *Gunter*, 427 Mass. 259, 275 (1998). Where, as here, however, "the trial judge may have been influenced in fixing sentence by the fact that the defendant had been convicted upon two [indictments], resentencing is required." *Commonwealth* v. *Clermy*, 37 Mass. App. Ct. 774, 779, *S.C.*, 421 Mass. 325 (1995).

The judgment of conviction for assault with intent to rape is vacated and the underlying indictment must be dismissed. The judgment of conviction for rape is affirmed. The sentence thereon is vacated and the case is remanded for resentencing on the conviction of rape.

*So ordered.*