LAHENS, COMMONWEALTH vs., 100 Mass. App. Ct. 310

 
 COMMONWEALTH vs. JEAN LAHENS.

100 Mass. App. Ct. 310
 June 2, 2021 - October 1, 2021

Court Below: Superior Court, Plymouth County
Present: Green, C.J., Blake, & Lemire, JJ.

 

Assault and Battery. Assault with Intent to Rape. Indecent Assault and Battery. Evidence, Intent. Intent. Statute, Construction. Words, "Strangulation." 

At the trial of indictments charging the defendant with, inter alia, assault with intent to rape, G. L. c. 265, § 24, the evidence was sufficient to prove an intent to rape, given the defendant's prior conspicuous sexual advances (i.e., sending the victim numerous text messages with sexual undertones and wearing a Speedo-style undergarment that revealed the outline of his genitals) coupled with the sexual nature of the assault. [314-315]

In the circumstances of a trial of indictments charging the defendant with, inter alia, strangulation or suffocation, G. L. c. 265, § 15D (b), this court concluded that strangulation was a general intent crime and that the evidence was sufficient to prove that the defendant intentionally applied substantial pressure on the victim's throat or neck which interfered with her normal breathing or circulation of blood, despite his claim that he did not specifically intend to do so. [315-319]

At the trial of indictments charging the defendant with, inter alia, indecent assault and battery on a person age fourteen or over, G. L. c. 265, § 13H, the evidence was sufficient to infer that the defendant intended to commit the indecent touching of the victim's breasts, where the defendant surreptitiously waited in the hallway for the victim, who was wearing only a bathrobe and towel, to emerge from the shower, and forced her into his bedroom where he placed his hands all over her body. [319-320]

INDICTMENTS found and returned in the Superior Court Department on March 23, 2018. 

 The cases were heard by Brian A. Davis, J. 

 Michael P. Gerace for the defendant.

 Johanna Black, Assistant District Attorney, for the Commonwealth.

 LEMIRE, J. After a bench trial, the defendant, Jean Lahens, was convicted on one indictment charging assault with intent to rape, in violation of G. L. c. 265, § 24; one indictment charging strangulation or suffocation, in violation of G. L. c. 265, § 15D (b); one indictment charging indecent assault and battery on a person age

 Page 311 

 fourteen or over, in violation of G. L. c. 265, § 13H; and one indictment charging assault and battery, in violation of G. L. c. 265, § 13A. On appeal, the defendant challenges the sufficiency of the evidence to support his convictions of assault with intent to rape, strangulation, and indecent assault and battery. [Note 1] Specifically, he claims that the Commonwealth failed to prove the intent element of those offenses beyond a reasonable doubt. For the reasons that follow, we affirm.

 Background. 1. The Commonwealth's case. Between June 2017 and January 2018, the victim, whom we shall call Olivia, [Note 2] was the defendant's tenant, renting one bedroom in the defendant's three-bedroom home in Brockton. Another woman, P.P., rented the second bedroom between April and December of 2017. The defendant resided in the third bedroom. He only rented rooms to females. 

 Each bedroom was secured by a lock on the door; the defendant had spare keys. A few weeks after moving in, Olivia was in her bedroom with her door locked. She overheard the defendant call out P.P.'s name. When P.P. did not answer, Olivia heard the defendant place a key into the doorknob of her own room and, as the door was about to open, Olivia stated, "Don't you even dare." Olivia subsequently installed a second lock on her door to prevent the defendant from entering her room without her permission.

 The defendant often engaged in behavior marked by sexual connotations, which made Olivia feel uncomfortable. When they talked, the defendant touched her hands and back. The defendant sometimes attempted to make conversation with Olivia while wearing a speedo-style undergarment that exposed the outline of his genitals. In one instance, the defendant told Olivia that he had not "been with a woman in two years" and asked her if she "could help him out." Another time, the defendant asked Olivia to "give him [her] friends" who had visited because she was not "ready to sleep with him." When Olivia went to shower, the defendant was regularly in the adjacent hallway, behavior that she found "creepy." As a result, Olivia wore a bathrobe and a towel when she went to shower. At no time did Olivia express interest in the defendant. [Note 3] 

 Page 312 

 The defendant also sent Olivia a bevy of unwanted and inappropriate text messages. Some text messages questioned why she was not home, and others asked how she was doing. Olivia did not respond to all of these messages. On December 9, 2017, the defendant sent Olivia a text message stating that he could not "figure out why every lady I meet dislike me so much." On December 16, 2017, the defendant asked, "[Wh]at you doing here tonite? Do you want a hangout a bit? After [all] it is the season to be joyful." Olivia did not respond to either text message. The following day, the defendant texted Olivia, "Are you a Nun? Or is it just a personal issue with me that you have? God won[']t forget your kindness towards me that I promise." In response, Olivia texted, "First of all [I] am a MARRIED WOMAN you are going to stop sending me these kind of messages and acting the way you do. . . . [I]f you continue [I] might have to go to the police and tell them you are harassing me sexually" (emphasis in original). Olivia believed that the defendant was frustrated because she did not entertain his sexual advances. On December 20, 2017, the defendant apologized and texted that he was "not a monster." The defendant continued to text Olivia over the weeks that followed; she did not respond. Although she had planned to return to the home on January 3, 2018, she decided otherwise in light of an impending snow storm and because of the defendant's text message that asked, "What[']s up sweet cake?" 

 When Olivia returned to the home a few days later, she informed the defendant that she was going to move out and find another apartment. An argument ensued, and the defendant forced himself into her bedroom. Olivia called 911, but disconnected the call before speaking with police. The defendant then left her room, and Olivia left the home. [Note 4] While Olivia was away, the defendant again sent her numerous text messages asking for her help, for forgiveness, and whether she wanted to rent a different room. Olivia did not respond to any of these messages. She returned to the home on January 20, 2018. 

 On January 21, 2018, Olivia woke up between 12 and 1 p.m. Wearing a towel and a bathrobe, she proceeded toward the bathroom

 Page 313 

 to take a shower. Because the defendant's bedroom door was ajar, she saw that the defendant was on his bed. She heard music coming from the living room at a low volume. As Olivia finished her shower and turned off the water, the music became noticeably louder. When Olivia opened the bathroom door and stepped into the hallway, the defendant was standing next to the door dressed only in a bathrobe. He grabbed her and, in spite of her efforts to break free, forced her toward his bedroom. Once inside, the defendant locked the door. He pushed Olivia onto his bed so that she was lying on her back. He pinned her down on the bed by her neck, repeatedly exclaiming, "Tell me who is the man now." She struggled to escape his grasp and pleaded with him to let go. Olivia experienced difficulty breathing due to the pressure of his hands on her neck. The defendant was on top of her, with his torso between her legs in a "sexual position." During the assault, her towel and bathrobe unraveled, exposing her vagina. His hands were "all over" her body, including her breasts. 

 After approximately two minutes, Olivia was able to break free when, in response to a question by the defendant, she stated she had a "medical condition" and that she could not breathe, and the defendant loosened the pressure on her neck. She attempted to scream for help out of the bedroom window, but the defendant covered her mouth with his hand and pulled her away from the window, causing the window to break. The defendant released Olivia after she bit his hand. She ran from his bedroom and called 911, reporting that the defendant had tried to rape her. 

 Upon their arrival, police officers heard "extremely loud music" coming from the home. Olivia appeared to be "distraught, hysterical, [and] hyperventilating." Officers observed a bloody bite mark on the "cuff area" of the defendant's wrist. The defendant was placed under arrest. 

 2. The defendant's testimony. The defendant's case consisted solely of his own testimony. With respect to the events that transpired on January 21, 2018, the defendant stated that he turned the music up while Olivia showered. As she left the bathroom, the defendant, in an attempt to be "friendly," grabbed her wrists and hugged her from behind. According to the defendant, Olivia started to throw punches and push him away. He tried "to calm her down" and they ended up on his bed in his bedroom. After struggling for two or three minutes, Olivia told the defendant that her blood pressure was rising, and the defendant stated that he "didn't know [she] had a medical condition" and left her

 Page 314 

 alone. Despite informing the defendant that she was having trouble breathing and needed some fresh air, Olivia screamed out of the bedroom window. He put his hand over her mouth to prevent her from screaming, telling her, "I'm not trying to hurt you" and to "just calm down." The defendant denied placing his hands on Olivia's throat, forcing her to have sex with him, or intentionally touching her breasts. 

 Discussion. Each of the defendant's three claims on appeal challenge the sufficiency of the evidence to support his convictions. The law applicable to our review of such claims is well established. "[W]e ask whether, taking the evidence and all reasonable inferences that may be drawn therefrom in the light most favorable to the Commonwealth, any rational trier of fact could find that each of the essential elements of the crime has been proved beyond a reasonable doubt." Commonwealth v. Santos, 100 Mass. App. Ct. 1, 3 (2021), citing Commonwealth v. Latimore, 378 Mass. 671, 677-678 (1979). "Proof of an essential element of a crime may be based on reasonable inferences drawn from the evidence, but it may not be based on conjecture." Commonwealth v. Combs, 480 Mass. 55, 61-62 (2018).

 1. Assault with intent to rape. First, the defendant claims that the Commonwealth failed to prove his specific intent to rape. [Note 5] The defendant avers that his conduct during the attack was not sexual in nature and that any sex he tried to obtain from Olivia prior to the attack was sought consensually. 

 "The two elements of assault with intent to rape are an assault on the victim and a specific intent by the defendant at the time of the assault to rape the victim." Commonwealth v. Martin, 447 Mass. 274, 287 n.9 (2006). "The crime of assault with intent to rape is a lesser included offense of rape." Commonwealth v. Kruah, 47 Mass. App. Ct. 341, 347 (1999). Rape does not require proof of a specific intent to have nonconsensual sexual intercourse; "proof that a defendant intended sexual intercourse by force coupled with proof that the victim did not in fact consent is sufficient to maintain a conviction." [Note 6] Commonwealth v. Lopez, 433 Mass. 722, 728 (2001).

 We conclude that the Commonwealth adduced sufficient evidence of the defendant's intent to rape. In the months leading up 

 Page 315 

to the attack, the defendant sent Olivia numerous text messages with sexual undertones, such that she emphatically reminded him that she was a "married woman." Following an argument prior to the assault, which caused Olivia to dial 911, the defendant passed her a handwritten note that reveled in her eyes, lips, and the "warmth of [her] body." See Martin, 447 Mass. at 291 (sexual content of notes found on defendant was evidence of defendant's intent). See also note 4, supra. The defendant wore a tight speedo-style undergarment around the home, which revealed the outline of his genitals. In addition, the attack itself was plainly sexual in nature. It occurred when Olivia, clad only in a towel and bathrobe, left the shower. The defendant forced Olivia into his bedroom, pushed her onto his bed, and got on top of her in a "sexual position." See Commonwealth v. Sevieri, 21 Mass. App. Ct. 745, 752 (1986) (evidence that "defendant dragged the struggling victim back to her bedroom and attempted to throw her on her bed" relevant to finding intent to rape). During the ensuing struggle on the bed, Olivia's vagina was exposed to the defendant. See Commonwealth v. Nickerson, 388 Mass. 246, 252-253 (1983) (evidence that victim's clothing "was in disarray" such that her "virtually naked body" was exposed was relevant to intent determination). The assault ended only because Olivia succeeded in breaking free of the defendant's grasp. In sum, the defendant's prior conspicuous sexual advances coupled with the sexual nature of the assault was sufficient evidence of intent to rape. See Commonwealth v. Brattman, 10 Mass. App. Ct. 579, 582 (1980).

 2. Strangulation. To maintain a conviction under G. L. c. 265, § 15D (b), the Commonwealth must prove beyond a reasonable doubt that the defendant (1) intentionally (2) interfered with the normal breathing or circulation of blood of the victim; and (3) applied substantial pressure on the throat or neck of the victim. See G. L. c. 265, § 15D (a). See also Commonwealth v. Rogers, 96 Mass. App. Ct. 781, 783-784 (2019). The defendant claims that the Commonwealth failed to prove that he committed the crime of strangulation because he did not specifically intend to interfere with Olivia's breathing while he restrained her on the bed. [Note 7] We reject this contention because we conclude that strangulation under § 15D (a) is a general intent crime.

 Page 316 

 a. Intent requirement of strangulation. The term "intentional[ly]" in G. L. c. 265, § 15D (a), has not been previously interpreted by this court or the Supreme Judicial Court. To properly evaluate the defendant's claim, we must define the mens rea required to support a conviction under 

§ 15D (b). With the exception of certain strict liability offenses, see, e.g., Commonwealth v. Wilbur W., 479 Mass. 397, 404-405 (2018), a criminal conviction requires proof that a defendant acted with a "blameworthy condition of the mind" -- the mens rea. See Commonwealth v. Buckley, 354 Mass. 508, 511 (1968). See also J.R. Nolan & L.J. Sartorio, Criminal Law § 102 (3d ed. 2001). Relevant to our discussion is the difference between general and specific criminal intent, distinctions that "can obscure more than they illuminate." Commonwealth v. Deschaine, 77 Mass. App. Ct. 506, 513 (2010).

 General intent requires proof that a defendant intended to perform a criminal act. See Commonwealth v. Kraatz, 2 Mass. App. Ct. 196, 202 (1974) (statute prohibiting making false statements in application for driver's license requires proof of "guilty knowledge [as] an essential element of the offense"). This court has previously construed the element "intentionally" as requiring proof of general criminal intent. See, e.g., Doe, Sex Offender Registry Bd. No. 36870 v. Sex Offender Registry Bd., 96 Mass. App. Ct. 246, 255 (2019) (G. L. c. 265, § 13B, indecent assault and battery on child under fourteen, is general intent crime; "[t]he intent element . . . requires that the touching be intentional[] . . . [and] without legal justification or excuse" [quotation and citations omitted]). Accord 1 W.R. LaFave, Substantive Criminal Law § 5.2(e), at 475 (3d ed. 2018) ("crimes of affirmative action require something in the way of a mental element -- at least an intention to make the bodily movement which constitutes the act which the crime requires"). Examples of general intent crimes in the Commonwealth include assault and battery by means of a dangerous weapon, in violation of G. L. c. 265, § 15A, see Commonwealth v. Ford, 424 Mass. 709, 711-712 (1997); rape, in violation of G. L. c. 265, § 22, see Lopez, 433 Mass. at 728; and wanton defacement of property, in violation of G. L. c. 266, § 126A, see Commonwealth v. McDowell, 62 Mass. App. Ct. 15, 24 (2004). 

 Page 317 

 A specific intent crime, by contrast, requires proof that the defendant not only "consciously intended to take certain actions, but that he also consciously intended certain consequences." Commonwealth v. Gunter, 427 Mass. 259, 269 (1998), S.C., 456 Mass. 1017 (2010) and 459 Mass. 480, cert. denied, 565 U.S. 868 (2011). See J.R. Nolan & L.J. Sartorio, Criminal Law § 104, at 157 (3d ed. 2001) (aside from intent to accomplish a prohibited act, "[c]ertain crimes require proof of a specific mental element or intent"). Specific intent crimes are commonly identified by the presence of a subjective intent to cause a result that is separate from the crime's actus reus. See 1 W.R. LaFave, Substantive Criminal Law § 5.2(e), at 476 (3d ed. 2018) ("[T]he most common usage of 'specific intent' is to designate a special mental element which is required above and beyond any mental state required with respect to the actus reus of the crime"). See, e.g., G. L. c. 265, § 18 (b) ("Whoever, being armed with a dangerous weapon, assaults another with intent to rob or murder . . ." [emphasis added]); G. L. c. 265, § 24 ("Whoever assaults a person with intent to commit a rape . . ." [emphasis added]); G. L. c. 266, § 30 (1) ("whoever unlawfully, and with intent to steal or embezzle, converts, or secretes with intent to convert, the property of another . . . shall be guilty of larceny" [emphasis added]). 

 With this background in mind, we examine the relevant statute. Whether a conviction under G. L. c. 265, § 15D (b), requires proof of general or specific intent is a question of statutory interpretation. "As with all matters of statutory interpretation, we look first to the plain meaning of the statutory language." Commonwealth v. Mogelinski, 466 Mass. 627, 633 (2013), S.C., 473 Mass. 164 (2015). "The language of the statute itself is our primary source of insight into legislative purpose." McDowell, 62 Mass. App. Ct. at 20. 

 The plain language of G. L. c. 265, § 15D (b), reveals that strangulation is a general intent crime. See id. ("Whoever strangles . . . another person shall be punished . . ."). Strangulation, in turn, is defined as "the intentional interference of the normal breathing or circulation of blood by applying substantial pressure on the throat or neck of another." G. L. c. 265, § 15D (a). A conviction under § 15D (b) does not require the Commonwealth to prove that the defendant contemplated inducing a specific result

 Page 318 

 while engaging in the 

proscribed act of strangulation. [Note 8] "[I]f the Legislature had intended to require specific intent, it would have used more explicit language as it has in other criminal statutes . . . ." [Note 9] Commonwealth v. Pfeiffer, 482 Mass. 110, 120, cert. denied, 140 S. Ct. 498 (2019). See, e.g., Commonwealth v. Forbes, 86 Mass. App. Ct. 197, 198-199 (2014) (mayhem, G. L. c. 265, § 14, [first theory], is specific intent crime; Commonwealth must prove defendant acted with "malicious intent to maim or disfigure"). 

 In sum, the plain language of the statute indicates that a conviction under § 15D (b) requires proof of a defendant's general criminal intent. Consequently, to prove the crime of strangulation, the Commonwealth need not prove that a defendant specifically intended to interfere with a victim's normal breathing; the intentional commission of an act that results in said interference is all that the statute requires. [Note 10] 

 b. Sufficiency of evidence as to defendant's intent. Turning to the merits of the defendant's sufficiency claim, we conclude that the evidence, viewed in the light most favorable to the Commonwealth, was sufficient to prove that the defendant intentionally applied substantial pressure on Olivia's throat or neck, and that interference with her normal breathing or circulation of blood resulted. 

 "A defendant's intent, like other mens rea requirements, may be established circumstantially." Commonwealth v. Smith,

 Page 319 

 17 Mass. App. Ct. 918, 919 (1983). The fact finder could permissibly infer the defendant's intent because the defendant restrained Olivia on his bed by her neck, and she insisted that she could not breathe. See Commonwealth v. Beckett, 373 Mass. 329, 341 (1977) (inference drawn from circumstantial evidence "need only be reasonable and possible; it need not be necessary or inescapable"). Further corroborating Olivia's account was evidence that her neck appeared tender and swollen following the attack, and evidence that she was diagnosed with a muscle strain. 

 At some point during the struggle, the defendant asked whether Olivia had a "medical condition" and, after being told that she could not breathe, he loosened the pressure on her neck. The defendant asserts that this action negates any inference that he intended to strangle her. Because strangulation is a general intent crime, however, the defendant is mistaken. Here, the defendant concedes that he interfered with Olivia's normal breathing and that he applied substantial pressure to her neck. As such, the intentional act of restraining Olivia by her neck on the bed, even if specifically intended for a purpose other than strangulation, is sufficient to satisfy the general intent requirement of § 15D (b). 

 3. Indecent assault and battery. Finally, the defendant claims that his conviction of indecent assault and battery on a person age fourteen or over must be reversed because there was no evidence that he intentionally touched Olivia's breasts. 

 "Indecent assault and battery on a person age fourteen or over is the 'intentional, unprivileged, and indecent touching of the victim.'" Commonwealth v. Melo, 95 Mass. App. Ct. 257, 261-262 (2019), quoting Commonwealth v. Kennedy, 478 Mass. 804, 810 (2018). See G. L. c. 265, § 13H. "Thus, to prove the intent element, the Commonwealth must prove that the defendant intended . . . to commit an indecent or offensive touching of the complainant without her consent." Commonwealth v. Marzilli, 457 Mass. 64, 67 (2010), overruled in part on other grounds by Commonwealth v. LaBrie, 473 Mass. 754 (2016). See Commonwealth v. Egerton, 396 Mass. 499, 504 (1986) (indecent assault and battery is general intent crime). [Note 11]

 Page 320 

 Here, there was sufficient evidence from which the fact finder could infer intentional, rather than accidental, indecent contact. Intent may be inferred from the circumstances surrounding the indecent assault. Commonwealth v. Holbrook, 86 Mass. App. Ct. 391, 393 (2014). The evidence, taken in the light most favorable to the Commonwealth and that was sufficient to prove the defendant's specific intent to rape, was also sufficient to prove that he intentionally touched Olivia's breasts. To summarize, there was significant evidence that the defendant made unwanted sexual advances toward Olivia prior to the assault, evincing his desire to engage in sexual relations with her. The assault itself was preceded by the defendant surreptitiously waiting in the hallway for Olivia to emerge from the shower, wearing only a bathrobe and towel. For at least two minutes after she was forced into the defendant's bedroom, his hands were "all over [her] body," including her breasts, as she struggled to escape. Combined with the defendant's commentary during the assault, where he repeatedly stated, "Tell me who is the man now," the evidence was sufficient to establish that he intended to commit the indecent touching. See Commonwealth v. Mosby, 30 Mass. App. Ct. 181, 185 (1991) (indecent behavior coupled with words "that had distinctly sexual overtones" sufficient to withstand defendant's motion for required finding). 

Judgments affirmed.

FOOTNOTES
[Note 1] The defendant makes no argument with respect to the conviction on the assault and battery indictment. 

[Note 2] A pseudonym. 

[Note 3] The defendant frequently asked P.P. for sex and once asked her to find someone that he could pay to have sex with him. P.P. rebuffed the defendant's advances. 

[Note 4] After leaving her room, the defendant placed a note under Olivia's door that read: 

"Your attitude I cannot stand. But; your eyes the way you look at me drains my spirit and say otherwise than what comes out of your lips. The warmth of your body I can feel when I lay down next to me. I can no longer take this torture; I am sorry." 

[Note 5] The defendant concedes that the evidence was sufficient to prove that he assaulted Olivia. 

[Note 6] Therefore, the defendant incorrectly asserts that the Commonwealth was required to prove that he intended nonconsensual sex. 

[Note 7] Although not so expressly stated, our reading of the defendant's brief indicates that his claim is framed by his belief that strangulation is a specific intent crime, requiring proof that he specifically intended to interfere with Olivia's breathing. 

[Note 8] Other jurisdictions, both State and Federal, have similarly interpreted their strangulation laws. See, e.g., United States v. Lamott, 831 F.3d 1153, 1156-1157 (9th Cir.), cert. denied, 137 S. Ct. 258 (2016) (Federal assault by strangulation statute requires general intent); State v. Williston, 159 Idaho 215, 221 (Idaho Ct. App. 2015) (Idaho strangulation statute criminalizing "willfully and unlawfully chok[ing]" is general intent crime); State v. Reed, 168 Wn. App. 553, 576 (2012) (assault by strangulation requires general intent). 

[Note 9] Section 15D was inserted by a 2014 session law entitled "An Act relative to domestic violence," which was designed to enhance protections for victims of domestic violence. St. 2014, c. 260, § 24. See 2013 Senate Doc. No. 2334. The legislation included, among other things, mandatory domestic violence training for police, assistant district attorneys, health care workers, and trial court personnel. See St. 2014, c. 260, §§ 1, 5, 9, and 18. That the Legislature focused broadly on acts of domestic violence instead of a particular defendant's mindset further bolsters our conclusion that the Legislature intended § 15D to require general intent. 

[Note 10] We reaffirm the longstanding notion that, in a jury trial on a charge of a general intent crime such as strangulation, a judge need not instruct the jury on the difference between general and specific intent. See Gunter, 427 Mass. at 268-269. 

[Note 11] We agree with the defendant that there is some tension in the case law regarding the intent requirement of indecent assault and battery. In Marzilli, 457 Mass. at 67, the court ascribed intent to commit an unconsented-to indecent touching with a "conscious purpose" to do the same. The phrase "conscious purpose" implies a mental state traditionally associated with specific intent, such as malice aforethought. See Commonwealth v. Bonomi, 335 Mass. 327, 356 (1957) ("The injuries inflicted on the deceased showed a conscious and fixed purpose to kill continuing for a length of time and warranted a finding of murder with deliberately premeditated malice aforethought"). Other decisions, however, have clearly stated that "[i]ndecent assault and battery is a general intent crime." Commonwealth v. Butler, 97 Mass. App. Ct. 223, 232 (2020). See Egerton, 396 Mass. at 504. We do not read Marzilli as broadly pronouncing that indecent assault and battery is a specific intent crime. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.