NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-900

COMMONWEALTH

vs.

LAMARR CARRIGAN.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

On February 28, 2024, a Norfolk Superior Court jury found the defendant guilty of strangulation in violation of G. L. c. 265, § 15D (b); assault and battery on a family or household member in violation of G. L. c. 265, § 13M (a); threat to commit a crime (to wit:  to kill) in violation of G. L. c. 275, § 2; malicious destruction of property over $1,200 in violation of G. L. c. 266, § 127; mistreatment of a police dog in violation of G. L. c. 272, § 77A; witness intimidation in violation of G. L. c. 268, § 13B; and violation of an abuse prevention order in violation of G. L. c. 209A, § 7.[1]  The defendant appeals,

---

[1] The defendant received concurrent sentences of two and one-half years for the assault and battery on a family or household member charge, six months for the threat to commit a

arguing that the judge erred by (1) denying the defendant's motions for a required finding of not guilty as to the strangulation and witness intimidation charges, and (2) providing a consciousness of guilt jury instruction. We affirm.

Discussion. 1. The defendant's motions for required findings. "In reviewing the denial of motions for directed verdicts in criminal cases, we have frequently said that we must consider and determine whether the evidence, in its light most favorable to the Commonwealth, notwithstanding the contrary evidence presented by the defendant, is sufficient . . . to permit the jury to infer the existence of the essential elements of the crime charged" (quotation and citation omitted). Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).

a. The strangulation charge. "Strangulation is defined as 'the intentional interference of the normal breathing or circulation of blood by applying substantial pressure on the throat or neck of another.'" Commonwealth v. Rogers, 96 Mass.

---

crime charge, from five to seven years for the destruction of property charge, two and one-half years for the mistreatment of a police dog charge, from five to seven years for the witness intimidation charge, and two and one-half years for the violation of an abuse prevention order charge. The defendant also received three years of probation with conditions for the strangulation charge to begin from and after his release from incarceration.

2

App. Ct. 781, 782-783 (2019), quoting G. L. c. 265, § 15D (a).

"To maintain a conviction under G. L. c. 265, § 15D (b), the

Commonwealth must prove beyond a reasonable doubt that the

defendant (1) intentionally (2) interfered with the normal

breathing or circulation of blood of the victim; and (3) applied

substantial pressure on the throat or neck of the victim."

Commonwealth v. Lahens, 100 Mass. App. Ct. 310, 315 (2021).

The defendant contends that he was entitled to a required

finding of not guilty because the victim testified that the

defendant did not interfere with her breathing, and the

physician who treated the victim testified to the absence of

certain evidence indicative of strangulation.[2]  We disagree.  The

Commonwealth provided sufficient evidence for the jury to

conclude that the defendant had interfered with the normal

breathing or circulation of blood of the victim.  See Latimore,

378 Mass. at 676-678; Lahens, 100 Mass. App. Ct. at 315-319.

Although the victim testified at trial that the defendant

did not interfere with her breathing,[3] she also testified that

_____

[2] Namely, the treating physician testified that he did not
see evidence of strangulation marks or carotid bruit, which he
explained "is a term to describe the sound over the vessels of
the neck if there is a tear in the vessel of the neck."

[3] Indeed, the same jury that found the defendant guilty of
witness intimidation may well have not credited statements the
victim made after conduct constituting witness intimidation
occurred.

she told the defendant during the attack, "Get off of me.  I can't breathe."  Further, the victim testified that she felt pressure while the defendant's hands were around her neck, that her neck hurt because of the squeezing, and that her neck felt sore for a day or two after the defendant attacked her.  This evidence was sufficient to withstand the defendant's motions for required finding of not guilty with respect to strangulation.  See Rogers, 96 Mass. App. Ct. at 783-784.

b.  The witness intimidation charge.  The defendant also contends that he was entitled to a required finding of not guilty regarding the witness intimidation charge because the victim testified that she was "aggravated" by the defendant's calls to her, but she did not state that she felt threatened or intimidated.  This contention is unavailing.

"The elements required to prove intimidation of a witness are that the defendant (1) willfully; (2) threatened, intimidated, or harassed; (3) a witness 'in a criminal proceeding of any type; (4) with the intent to impede or interfere with a criminal investigation or proceeding.'"  Commonwealth v. Gardner, 102 Mass. App. Ct. 299, 304 (2023), quoting Commonwealth v. Nordstrom, 100 Mass. App. Ct. 493, 499-500 (2021).  "[T]he jury may consider the context in which the allegedly threatening statement was made and all of the surrounding circumstances."  Commonwealth v. Sholley, 432 Mass.

4

721, 725 (2000), cert. denied sub nom. Sholley v. Massachusetts, 532 U.S. 980. The elements of witness intimidation are defined "by the acts, statements, and intentions of the defendant and their ordinary effects on a reasonable person, not the personal reaction of the particular, potential witness" (emphasis added). Commonwealth v. Rivera, 76 Mass. App. Ct. 530, 530 (2010).

Here, the evidence was sufficient for the jury to have concluded that the defendant threatened, intimidated, or harassed the victim. The defendant called the victim four times between November 22, 2024, and November 25, 2024, in disregard of a no-contact restraining order. In those calls, the defendant repeatedly yelled at the victim, told her that he knew that the Commonwealth's prosecution depended on her cooperation, and instructed her to tell the prosecution that she did not want to cooperate as a witness and to lie that he had not instructed her to do so. In one call, the victim responded, "Why do I gotta hear this every day? It is Thanksgiving," and "I'm tired of hearing about this shit every single day since that shit happened. People need to be accountable, responsible, for their fucking actions. I'm tired of hearing this shit every day." At the end of the same call she yelled at the defendant, "I'm already fucked up. Get the fuck off my phone." This was more than enough for the jury to conclude that the defendant's calls intimidated the victim. See Commonwealth v. Gardner, 102 Mass.

5

App. Ct. 299, 305 (2023) (letters with "repeated references to the victim as both the reason for [defendant's] incarceration and prosecution and the only potential key to his freedom" were intimidating in light of defendant's abusive relationship with victim); Sholley, 432 Mass. at 725-726.  Even if the jury found that the victim herself did not feel intimidated, threatened, or harassed, the jury had grounds to find that the defendant's statements would have had those effects on a reasonable person.  See Rivera, 76 Mass. App. Ct. at 530.

2.  The consciousness of guilt jury instruction.  After speaking with the victim outside of the apartment complex where the incident occurred, police attempted to make contact with the defendant by approaching the victim's apartment unit where the assault took place.  At the time, the police were accompanied by a canine officer and his patrol dog Gandhi.  When the police announced their presence and requested the defendant to come out of the apartment, the defendant refused and stated he did not want the dog to come in.  The officers eventually breached the entry door with a miniature sledgehammer and a small pry bar.  Once they gained entry the officers discovered that the door had been barricaded with articles from within, including a table, several chairs, and a small chest freezer.  Once inside, the officers found the defendant hiding in a bathroom.  The officers forced the bathroom door open, and the dog bit and attached

6

himself to the defendant.  After the defendant slammed the door on the dog repeatedly in an effort to free himself, the defendant struggled with the officers and attempted to kick the dog before he was eventually secured and handcuffed.

At the conclusion of the trial, the judge instructed the jury that if they found that the defendant "fail[ed] to respond to the police or attempted to intimidate or harass a witness who would testify against him, you may consider whether such actions indicate feelings of guilt by the defendant, and whether in turn such feelings of guilt reflect actual guilt on the charges in this case.  You are not required to draw such inferences, and you may not do so unless they appear to be reasonable in light of all the circumstances of this case."  The defendant argues that these instructions were improper because (1) the testimony suggested he refused to open the door because he was afraid of the police dog, and (2) instructing the jury that witness intimidation could reflect the defendant's consciousness of guilt risked confusing the jury.  We are not persuaded.

"To determine whether a consciousness of guilt instruction is warranted, a judge need only assess the relevancy of the evidence."  Commonwealth v. Morris, 465 Mass. 733, 738 (2013).  Because the defendant objected to the consciousness of guilt instruction at trial, "we consider whether the judge erred, and, if so, whether we can be certain that the improper instruction

7

did not influence the jury, or had but very slight effect" (quotations and citation omitted).  Id. at 737 n.2.  Here, there was no error.  The judge was correct that the defendant's nonresponse to police repeatedly knocking and the defendant's intimidation of the victim, if found by the jury, could reflect the defendant's consciousness of guilt.  See Commonwealth v. Bruneau, 472 Mass. 510, 519 (2015) (fact that "[t]he defendant did not answer the door in response to repeated knocking by police" was evidence of consciousness of guilt); Commonwealth v. Perez, 444 Mass. 143, 147 (2005) ("It is well established that evidence regarding threats or intimidation of key witnesses for the prosecution is admissible to demonstrate consciousness of guilt" [citation omitted]).  Whether the defendant in fact refused to open the door because he feared the police dog was a question for the jury, not this court.  See Commonwealth v. Witkowski, 487 Mass. 675, 681 n.6 (2021) ("In general, when conflicting inferences are possible from the evidence, it is for

8

the jury to determine where the truth lies" [quotations and citation omitted]).

Judgments affirmed.

By the Court (Desmond, Shin & Walsh, JJ.[4]),

Clerk

Entered:  March 31, 2026.

---

[4] The panelists are listed in order of seniority.